**In re Joseph MORA and Toshiko Mora, Debtors.**

**Gilbert R. VASQUEZ, Chapter 7 Trustee, Appellant,**

**v.**

**Joseph MORA and Toshiko Mora, Appellees.**

**BAP No. CC–97–1216–RuJH.**
**Bankruptcy No. LA–95–15597–ER.**
**Adversary No. LA–96–01943–ER.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 23, 1997.

Decided Feb. 19, 1998.

Richard Malatt, Dumas & Associates, Los Angeles, CA, for Gilbert R. Vasquez and James A. Dumas, Jr.

Steven A. Schwaber, Angel & Neistat, Los Angeles, CA, for Joseph A. Mora and Toshiko Mora.

Before: RUSSELL [1], JONES and HAGAN, Bankruptcy Judges.

### *OPINION*

RUSSELL, Bankruptcy Judge.

Appellant Gilbert R. Vasquez, the Chapter 7 Trustee ("Trustee"), appeals a judgment by the bankruptcy court in favor of the appellees Joseph Mora and Toshiko Mora ("Debtors"), requiring him to turn over to Debtors $24,660.27 previously seized as an avoidable postpetition transfer. In entering judgment, the bankruptcy court held that a transfer of an interest in a cashier's check occurs at the time the check is mailed for purposes of

---

**1.** Honorable David E. Russell, Chief Bankruptcy Judge for the Eastern District of California, sitting by designation.

avoiding postpetition transfers under 11 U.S.C. § 549(a). We **REVERSE.**

## I. FACTS

The basic facts are not in dispute. On March 1, 1995, Debtors purchased a cashier's check from their California bank in the amount of $24,660.27 made payable to Banc-Boston Mortgage Corporation ("BancBoston"). This money was intended to reduce the principal balance owing on the Debtors' home mortgage. That same day, Debtors placed the cashier's check in the U.S. mail.

The next day, March 2, 1995, Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[2] The cashier's check arrived at BancBoston on March 6, 1995, and on March 7, 1995, was credited towards the principal balance owing on Debtors' mortgage.

The Trustee contacted BancBoston and demanded return of the $24,660.27 payment claiming that it was an illegal postpetition transfer of estate property. In September 1995, BancBoston turned over the money to the Trustee and charged Debtors' mortgage account.

In July 1996, Debtors filed an amended complaint against the Trustee and BancBoston seeking declaratory relief that the returned money was not property of the estate and that the Trustee had converted the money. The Trustee filed an answer to the complaint.[3] As an affirmative defense, the Trustee claimed the payment was an avoidable postpetition transfer of estate property.

On February 24, 1997, a trial was held on Debtors' amended complaint. After hearing from several witnesses, the court issued judgment in favor of Debtors and ordered the Trustee to return the $24,660.27 payment to BancBoston. The court found that as a matter of law, the transfer of the cashier's check occurred prepetition, at the time it was placed in the mail. The Trustee appeals.

## II. ISSUE ON APPEAL

Whether the bankruptcy court erred in holding that the transfer of an interest in a cashier's check for purposes of 11 U.S.C. § 549(a) occurs at the time the check is mailed.

## III. STANDARD OF REVIEW

 ■ The determination of when an avoidable postpetition transfer of estate property occurs is a question of law. *See Barnhill v. Johnson,* 503 U.S. 393, 397, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). Questions of law are reviewed *de novo. In re Defender Drug Stores, Inc.,* 145 B.R. 312, 315 (9th Cir. BAP 1992). The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. *In re Itule,* 114 B.R. 206, 209 (9th Cir. BAP 1990); Fed. R.Bankr.P. 8013.

## IV. DISCUSSION

 Section 549(a) of the Code permits the Trustee to avoid a postpetition transfer of estate property. Section 550(a)(1) permits a trustee to recover the amount of the avoidable transfer from the initial transferee. *In re Montross,* 209 B.R. 943, 947–48 (9th Cir. BAP 1997). To avoid a transfer under § 549(a), the Trustee must show that after commencement of the bankruptcy in question, property of the estate was transferred and the transfer was not authorized by the bankruptcy court or the Code. *In re Kingsley,* 208 B.R. 918, 920 (8th Cir. BAP 1997); *In re Dominion Corp.,* 199 B.R. 410, 412 (9th Cir. BAP 1996).

The parties in this case agree, and the bankruptcy court held, that under California law Debtors had an interest in the cashier's check prior to mailing it to BancBoston. *In re Richmond Produce Co. Inc.,* 151 B.R. 1012, 1017 (Bankr.N.D.Cal.1993), *aff'd,* 195 B.R. 455 (N.D.Cal.1996). And, Debtors do not contend that mailing the cashier's check to BancBoston was authorized by either the

---

2. Unless otherwise indicated, all "chapter(s)," "code(s)," "section(s)," "§" and "rule(s)" references are to the provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* or the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

3. BancBoston did not respond to Debtors' complaint and is not a party to the present appeal.

Code or the bankruptcy court. On appeal, the Trustee asserts that Debtors' sending of the cashier's check to BancBoston was an avoidable postpetition transfer of estate property because the check was delivered to and cashed by BancBoston after Debtors filed bankruptcy. Debtors claim they transferred the cashier's check prepetition because it was mailed to BancBoston on March 1, 1995, prior to them declaring bankruptcy on March 2.

 When a cashier's check is specifically deemed transferred for purposes of § 549(a) appears to be an unanswered question. "Transfer" is broadly defined by the Code as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). Quoting § 101(54)'s legislative history, we have recognized that this definition of transfer includes any transfer of "possession, custody, or control." *In re Lee*, 179 B.R. 149, 158 (9th Cir. BAP 1995), *aff'd*, 108 F.3d 239 (9th Cir.1997). What constitutes a transfer and when it is complete is a question of federal law. *Barnhill v. Johnson*, 503 U.S. at 397, 112 S.Ct. at 1389 (citing *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945)). In the absence of any controlling federal law, "property" and "an interest in property" are creatures of state law. *Barnhill*, 503 U.S. at 398, 112 S.Ct. at 1389.

In *In re Lee*, 179 B.R. 149, the Panel examined whether the transfer of a cashier's check for purposes of § 547(b) occurs at the time it is issued or at the time the check is delivered to its intended recipient. In *Lee* we held that a transfer occurs at the time a cashier's check is delivered. 179 B.R. at 161. The transfer analysis for § 547(b) and § 549(a) is analogous. *In re Rainbow Music, Inc.*, 154 B.R. 559, 561 (Bankr.N.D.Cal. 1993).

·However, *Lee* apparently left unclear the crucial question of when delivery is effectuated. Does delivery occur at the time the purchaser of the cashier's check relinquishes physical possession of the check by transmitting it or at the time it is actually received by the intended payee?

In this case, the bankruptcy court examined *Lee* and held that delivery was effectuated when the cashier's check was deposited in the mail because Debtors lost physical possession of the check, thereby placing it in the constructive possession of BancBoston. In reaching this conclusion, the bankruptcy court relied upon *Lee*'s determination that under California law the drawer of the cashier's check, Debtors here, have no right to stop payment of the cashier's check once it leaves their physical possession. *See* 179 B.R. at 161.

 However, the bankruptcy court's analysis of *Lee* was inaccurate. In *Lee*, we held that "until delivery, the purchaser's property rights in the cashier's check are not transferred to the payee/holder." 179 B.R. at 161. We stated that the "negotiable instruments provisions [of the California Commercial Code] are predicated on the rights of a holder, and one cannot be a holder without possession."[4] 179 B.R. at 161 n. 12 (citing Cal.Com.Code § 1201(20) (West 1994)). Thus *Lee* equated date of delivery as the date the cashier's check is in the physical possession of the payee. In that case, we explicitly found that the transfer of the cashier's check occurred on the date the intended recipient actually received ·the check from the debtor. 179 B.R. at 165. *Lee* does not stand for the broad proposition that a transfer occurs at the mere transmittal of a cashier's check absent actual receipt by the payee. In accordance with *Lee*, we now hold that a cashier's check is transferred for purposes of § 549(a) when it is in the physical possession or control of the intended payee.

While not controlling, the Uniform Commercial Code also supports the conclusion we reach. California has largely adopted the

---

4. A holder "with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." Cal.Com. Code § 1201(20) (West 1995). A cashier's check is a negotiable instrument. *See* Cal.Com.Code §§ 3104, 3412 (West 1995).

U.C.C. *Goldie v. Bauchet Properties*, 15 Cal.3d 307, 314–15, 124 Cal.Rptr. 161, 540 P.2d 1, 6–7 (1975). Uniform Commercial Code § 3–203(a) (adopted in California as Cal.Com.Code § 3203(a)) defines transfer of a cashier's check as occurring "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." " 'Delivery' with respect to instruments, documents of title, chattel paper or certificated securities means voluntary transfer of possession." Cal.Com.Code § 1201(14) (West 1995) (U.C.C. § 1–201(14)). Possession is commonly understood as "the act of having or taking into control." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 918 (9th ed.1985).

In this case, it is undisputed that BancBoston was not in physical possession of the cashier's check until March 6, 1995, after Debtors filed their bankruptcy petition on March 2.[5] Nor could BancBoston have taken control of the cashier's check until it physically received it.

■ The bankruptcy court, however, concluded that BancBoston had constructive possession of the cashier's check at the time of mailing because Debtors "could not ask for a return of the cashier's check out of the mail, or divert its delivery, and it is unlikely that the bank which made the cashier's check could honor a request to stop payment." This conclusion is inaccurate.

While it is true that Debtors had no right to stop payment of the cashier's check once it left their possession, under the U.C.C. a bank can refuse to pay the cashier's check as an accommodation to its customer.[6] *Lee*, 179 B.R. at 160 (citing Cal.Com.Code § 3411, 1992 U.C.C. Comment (West 1994)). Additionally, United States postal regulations permit individuals to reclaim mail that has not yet been delivered to the intended recipient. *See* U.S. Postal Service Domestic Mail Manual § D030(1.1), incorporated into 39 C.F.R., Ch. 1 § 111.1 (1997). Debtor's cashier's check could have been plucked from the mail prior to being in the possession of BancBoston. It therefore can not be said that merely mailing the cashier's check placed it in either the actual or constructive possession of BancBoston.

The Trustee claims that the Supreme Court's decision in *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, requires finding that a transfer occurs at the time the cashier's check is received.[7] In *Barnhill*, the Supreme Court considered the question of when a transfer of an ordinary check occurs for purposes of § 547(b), the date the check is delivered to the payee or on the date the drawee bank honors it. 503 U.S. at 395–96, 112 S.Ct. at 1388. The *Barnhill* Court held that a transfer occurs when the drawee bank honors the check by paying on it reasoning that mere receipt of a check gives the recipient no right in the funds held by the bank on the drawer's account. *Id.* at 399, 112 S.Ct. at 1390. "Myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored. The drawer could obtain a lien against the account by garnishment or other proceedings. The bank might mistakenly refuse to

5. On appeal Debtors allege that the cashier's check was likely delivered to BancBoston by March 2, 1995, because it was mailed on March 1. However in the court below, the parties agreed that the cashier's check was not received by BancBoston until March 6, 1995.

6. We recognize that it would be unusual for a bank to honor a request not to pay on a cashier's check it issued because the U.C.C. provides banks with every incentive to honor their cashier's checks. Under Cal.Com.Code § 3411(b) (West 1995), a bank that refuses or stops payment on the cashier's check is potentially liable for expenses, lost interest resulting from nonpayment, and consequential damages if it receives notice of the particular circumstances giving rise to such damages. Section 3411 is specifically

designed to discourage the practice of dishonoring cashier's checks. *See* U.C.C. § 3–4111 cmt 2 (1992). Nevertheless, the fact that Debtors' bank could choose not to honor the cashier's check is an additional factor in finding that the check was not in the possession of BancBoston merely because it was mailed.

7. On appeal, Debtors claim that the holding of *Barnhill* is questionable given the subsequent enactment of Cal.Com.Code § 3310. Section 3310 merely states that the presentment of a cashier's check, uncertified check or note discharges an obligation to the same extent as presenting cash. That section has no relevance to transfers of cashier's checks under the Bankruptcy Code and does not affect the validity of *Barnhill*.

honor the check." *Id.* The *Barnhill* analysis is applicable to the analysis of § 549 postpetition transfers involving ordinary checks. *Rainbow Music, Inc.,* 154 B.R. at 561.

Employing the *Barnhill* rationale, the Trustee argues that transfer of the cashier's check was not effectuated at mailing because a myriad of events could have occurred between the time the check was mailed and the time BancBoston received it that would have prevented BancBoston from collecting its money. For example, the cashier's check could have been lost in the mail or BancBoston could have inadvertently lost or destroyed it once received.

However, the *Barnhill* analysis is not determinative here. A cashier's check is not like the ordinary check that the *Barnhill* Court examined. *See Lee,* 179 B.R. at 160–61 (rejecting *Barnhill* standard for cashier's checks). The various events that can interfere with payment of an ordinary check are not always relevant when a cashier's check is involved. For example, under the U.C.C. and California law, had Debtors' cashier's check been lost or destroyed, BancBoston could still seek to enforce its claim to the amount of the check. *See* Cal.Com.Code § 3312(b) (West 1995) (U.C.C. § 3–312(b)). But the claim to a lost cashier's check is not legally enforceable for at least 90 days after the date the check was issued. *Id.* BancBoston would therefore have had no claim for a lost cashier's check until 90 days past March 1, 1995, the date Debtors purchased the check. Again BancBoston's legal interest in the check would not be cognizable until postpetition.

Finally, nothing under California law suggests that Debtors' mortgage obligation to BancBoston would be reduced merely by placing the cashier's check in the mail absent receipt by BancBoston. *Cf. Cornwell v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 224 Cal.App.3d 995, 274 Cal.Rptr. 322 (1990) (mortgage payment made by ordinary check mailed but not received does not relieve sender of obligation to make payment). It is also unlikely BancBoston would have voluntarily relieved Debtors of their mortgage obligation merely because the check was sent but not received. A rule making transfer of a cashier's check effective merely by mailing it would thus ignore common business practice and common sense.

## V. CONCLUSION

A transfer of a cashier's check for purposes of 11 U.S.C. § 549(a) occurs when the check is in the physical possession or control of the intended payee. The bankruptcy court's conclusion that the cashier's check was in the constructive possession of BancBoston at the time the check was mailed is erroneous. The transfer of the check in this case occurred postpetition and is thus an avoidable transfer of estate property. We **REVERSE** and direct the bankruptcy court to enter judgment in favor of the Trustee.