In re Kevin M. STANTON & Mary Ann Stanton, Debtors.

Gregory Beeler, As Trustee for the above-entitled estate, Plaintiff,

v.

Kevin M. Stanton and Maryann G. Stanton, husband and wife, Debtors/Defendants,

and

International Factors, Inc. a Washington corporation, Fleet Manufacturing Company, Inc., a Washington corporation, Defendants.

Bankruptcy No. 94–02481–R3B.
Adversary No. A96–0169–R3B.

United States Bankruptcy Court, E.D. Washington.

Sept. 17, 1999.

Gregory Beeler, Tri–Cities, WA, for trustee.

Sigurd B. Borgersen, Seattle, WA, for Harrison Jewell (Successor to IFI).

Kevin & Maryann Stanton, Yakima, WA, debtors pro se.

## MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Chief Judge.

### I

#### Parties

This adversary proceeding was filed by Gregory Beeler, Chapter 7 Trustee in the bankruptcy of Kevin and Maryann Stanton, cause number 94–02481–R3B. The proceeding was brought against Kevin and Maryann Stanton, International Factors Inc., and Fleet Manufacturing Inc. Kevin and Maryann Stanton were dismissed as

defendants on February 27, 1997[1]. International Factors filed an answer and actively defended its position.[2] Fleet Manufacturing did not appear and defend in this matter.

## II

### Jurisdiction

The issues in this matter involve administration of the bankruptcy estate, and determination of the validity, extent and priority of liens. It is a core proceeding. 28 U.S.C. § 157(b)(2)(A) & (K).

## III

### Facts

Fleet Manufacturing Inc. (Fleet) was a business operated by the debtors herein, Kevin and Maryann Stanton. On April 22, 1994 Fleet entered into a Recourse Factoring, Short Term Financing, & Security Agreement (factoring agreement) with International Factors Inc. (IFI).[3] On the same date Kevin and Maryann Stanton executed and delivered to IFI a Continuing Guaranty and Waiver. The guaranty covered all obligations owing from Fleet to IFI. Kevin and Maryann Stanton granted IFI a deed of trust on their personal residence on July 28, 1994.[4] The deed of trust states that it was granted to secure all obligations owed by Fleet to IFI. Finally,

on August 4, 1994 Fleet and IFI entered into an Addendum to Recourse Factoring, Short Term Financing & Security Agreements[5]. This agreement increased the maximum amount that could be outstanding between Fleet and IFI from $150,000 to $250,000. It also created a special discount rate for advances on a contract Fleet had with K–Mart.

The relationship between Fleet and IFI generally involved Fleet assigning to IFI accounts receivable and IFI advancing to Fleet the amount of the invoices assigned less a discount factor. IFI handled the billing and collection of the invoices. If the invoices were not timely paid IFI could seek recovery from Fleet. IFI kept separate ledgers for each Fleet customer. The ledgers noted the invoice upon which the advance was made. When a payment was received it was credited to the appropriate invoice. The K–Mart contract presented a variation from the pattern in that it involved work in progress rather than invoices for completed work.[6]

Kevin and Maryann Stanton filed a Chapter 11 bankruptcy on September 30, 1994. After the filing, the factoring arrangement continued to function with advances being made and payments credited. No motion was made seeking approval of the continued post petition secured guaranty of the Stantons. The Stanton's bankruptcy proceeding was converted to a

1. Although the Stanton's were dismissed as defendants they have actively participated in the summary judgement proceedings by filing declarations, memoranda and participating in oral argument. The basis of their continued participation is not clear but it has been informative.

2. International Factors Inc. was placed under state court ordered receivership. Harrison Jewel was a creditor of International Factors and succeeded to IFI's claim against the debtors. References to Harrison Jewel and IFI are interchangeable.

3. A copy of the Recourse Factoring, Short Term Financing & Security Agreement is attached as exhibit 1 to the Declaration of Counsel (Sigurd Borgersen) which is attached to Facts Relied Upon [Doc 69]. All docket number references are to the numbers as-

signed to pleadings by the Clerk of the court as the pleadings are filed.

4. Copies of the Continuing Guaranty and Waiver and the Deed of Trust are attached to the Affidavit of Charlie Bright. [DOC 11].

5. A copy of the Addendum to Recourse Factoring, Short Term Financing & Security Agreement is attached as Exhibit 3 to the Declaration of Counsel (Sigurd Borgersen) which is attached to Facts Relied Upon. [Doc 69].

6. The Stantons have argued that the deed of trust was only meant to secure the K–Mart contract. Neither the deed of trust nor the Addendum limit the scope of the deed of trust which on its face secures all debt subject to the April 24, 1994 guaranty.

Chapter 7 on May 11, 1996. The Chapter 7 Trustee sold the debtors residence and IFI claimed that the lien created by it's deed of trust attached to the proceeds of the sale. The Chapter 7 Trustee filed the present action on September 27, 1996. In the complaint the Trustee sought to have the mortgage and post-petition transfers thereunder avoided. Further, the Trustee sought to have the transferee, IFI, held liable for the transfer and the transfer preserved pursuant to Section 551 as an avoided lien. Finally, that the claim of In be disallowed. Both the Trustee and IFI have filed motions for summary judgement.

## IV

### Issues Presented

The following issues are presented by the motions for summary judgement:

1. What was the effect of the bankruptcy filing on the secured guaranty?
2. What is the amount of IFI's claim secured by the guaranty?
3. Did the secured guaranty cover the post-petition advances from IFI to Fleet?
4. Did the factoring agreement, guaranty and deed of trust taken together constitute an executory contract?
5. Did the post-petition advances made by IFI in reliance upon the secured guaranty amount to a transfer of estate property subject to avoidance under 11 U.S.C. 549?
6. If there was a transfer did it constitute a violation of the automatic stay?

## V

### Discussion

A. *Standards for Summary Judgement*

Federal Rule of Civil Procedure 56 sets out the requirements for summary judgement.

7. IFI claims that Fleet owed it $243,763 on December 31, 1997. IFI further claims that by virtue of the guaranty the debtors also

The judgement sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law.

FRCP 56(c). "A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Electrical Service Inc. v. Pacific Electric Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the burden of identifying the documents listed in Rule 56 which demonstrate the absence of a genuine issue of material fact. However, the moving party is not required to provide affidavits or declarations which negate the opponents claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In analyzing a motion for summary judgement the evidence presented by the non moving party is to be believed and all justifiable inferences are to be drawn in favor of the non moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Affidavits presented in opposition to a motion for summary judgement must be admissible under the rules of evidence. *Hal Roach Studios v. Richard Feiner & Co., Inc.* 896 F.2d 1542, 1550 (9th Cir.1989).

B. *Effect of the Filing of the Bankruptcy Petition on the Secured Guaranty and Corresponding Claim.*

■■■ IFI takes the position that it is currently owed by the debtors an amount which ranges from $39,586 to $243,763 [7]. IFI argues that its debt is secured by the guaranty and deed of trust and therefore IFI has a lien on the proceeds from the

owed this amount. On December 31, 1994 Fleet owed IFI $39,586. This represents the lowest post-petition balance. [Doc. 69]

sale of the debtors' residence. The Chapter 7 Trustee and the debtors dispute IFI's claim of a lien.

The parties agree that the guaranty and deed of trust secured pre-petition advances from IFI to Fleet. The parties disagree as to the whether the guaranty and deed of trust are enforceable against the estate as to post-petition advances from IFI to Fleet. The first question that needs to be answered is what effect the bankruptcy filing had on the guaranty and deed of trust.

■ The filing of a bankruptcy petition creates a "cleavage" in time. *In re B & L Oil Company,* 782 F.2d 155 at 158 (10th Cir.1986). On one side of the dividing line is the pre-petition debt and on the other is post-petition debt. The effect of the dividing fine is that generally pre-petition debt is paid from pre-petition assets while post-petition debt is paid from post-petition assets.

The Bankruptcy Code creates and defines this dividing fine in a number of ways. The filing of a voluntary petition under section 301 constitutes an order for relief. 11 U.S.C. § 301. Commencement of a case under sections 301, 302 or 303 creates the bankruptcy estate. 11 U.S.C. § 541(a). Property of the bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Likewise, upon filing of a petition for relief, a stay of acts against the debtor and property of the estate comes into existence under 11 U.S.C. § 362(a). Included within the scope of the stay is the creation or enforcement of liens and any act to collect or enforce a claim arising pre-petition. 11 U.S.C. § 362(a)(3)–(4) & (6). In 11 U.S.C. § 544 the trustee is given the power to avoid certain pre-petition transfers.

A creditor's claim is determined as of the date of the filing of the petition. 11 U.S.C. § 502(b). The Bankruptcy Code defines "claim as follows"

(5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgement, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured: or . . . .

11 U.S.C. § 101(5)(A). "Creditor" is defined as an entity that has a claim against the debtor that arose at the time of or before the order for relief. 11 U.S.C. § 101(10)(A). The effect of these provisions is to fix the amount of the debtors liability as of the time the petition is filed.

■ There are circumstances where property of the estate can be subject to post-petition debt. Administrative expenses allowed under 11 U.S.C. § 503 and adequate protection payments arising pursuant to 11 U.S.C. § 361 are post-petition debts payable by the estate. Likewise properly accepted executory contracts under 11 U.S.C. § 365 and extensions of secured credit approved pursuant to 11 U.S.C. § 364 are payable from assets of the estate. Upon the filing of a bankruptcy petition the debtor loses the ability to further encumber assets of the estate without court approval. *In re Mahendra,* 131 F.3d 750, 755 (8th Cir.1997). In every instance above post petition claims against the estate arise only upon court approval.

The Court concludes that the guaranty and deed of trust executed by the debtors only encumbered estate property with respect to advances from IFI to Fleet which were made prior to the filing of the bankruptcy with regard to property of the estate. The guaranty and deed of trust did not secure unapproved post-petition advances from IFI to Fleet. Any other interpretation of the effect of the bankruptcy filing on pre-petition agreements and documentation would negate the principles of discharge, fresh start and court supervision and control of the estate, all of which are cornerstones of bankruptcy law.

C. *What was the Amount of the Pre-Petition Claim Secured by the Guaranty and Deed of Trust?*

■ Determination of IFI's claim secured by the guaranty and deed of trust requires reference to the debt outstanding as the date of filing. The ledger sheets provided by Harrison Jewel and the calculations submitted by the Stantons indicate that as of the September 30, 1994, the date the bankruptcy was filed, the outstanding invoices totaled $244,623.64. Thus, as of the date of filing IFI had a claim of $244,623.64. This claim was at least partially secured by the deed of trust. The next step in the analysis is to examine the payment history of the invoices outstanding on the date of filing to see if those invoices were paid. To the extent these invoices were not paid, IFI would have recourse against the debtors and a claim secured by the deed of trust.

IFI maintained a number of different ledger sheets to track the advances it made to Fleet and the subsequent receipt of payments on those accounts. The ledgers show that each advance to Fleet was tied to an invoice number. As payments were received they were credited to an invoice number. Therefore, it is possible to track advances and receipts. The following chart shows the outstanding invoices as of the date of filing and the post petition credits to those invoices.

Outstanding Invoices Stanton–IFI [8]

As of 9/30/94

| Ledger # | Outstanding Invoices 9/30/94 | Amount | Date Invoices Paid in Full |
|---|---|---|---|
| 330 | 1474 | $ 8,505.00 | 10/11/94 |
| 330 | 1475 | $ 3,150.00 | 10/31/94 |
| 600 | 1525 | $ 19,003.50 | 11/28/94 |
| 500 | 1 | $ 18,241.04 | 10/24/94 |
| 500 | 2 | $ 65,959.61 | 10/24/94 |
| 500 | 3 | $ 58,871.66 | 11/08/94 |
| 500 | 4 | $ 44,820.85 | 12/5/94 |
| 900 | 1496 | $ 22,485.60 | 11/3/94 |
| 050 | 1537 | $ 3,586.38 $244,623.64 | 11/21/94 |

It is quite clear that by November 21, 1994 that all of the pre-petition invoices had been paid in full. IFI's pre-petition secured claim was fully paid.

The Court's analysis focuses on the amount of the pre-petition debt and the application of payments to that debt post-petition. IFI makes the argument that in fact Fleet's debt to IFI never dropped below $39,586 at any time after the Stantons bankruptcy was filed. Based upon this fact IFI argues that the deed of trust continues to secure post-petition debt. The ledgers show that IFI continued to make advances to Fleet after the Stanton's bankruptcy was filed. As a result the ledgers never show a zero balance because post petition debt was added to the ledgers. IFI's argument does not take into account that its claim is determined as of date of the bankruptcy filing. The date of filing is also the moment when the guaranty and deed of trust ceased to function with regard to new debt as to the estate. The post-petition advances from IFI to Fleet were not secured by the guaranty and deed of trust as to the estate. For these reasons the Court views IFI position as flawed and it is rejected.

The Court concludes that as of November 21, 1994 IFI's pre-petition claim secured by the guaranty and deed of trust was paid in full. As a consequence IFI's secured claim against the estate was satisfied.

D. *Did IFI's Lien "Pass Through" the Bankruptcy Unaffected by the Debtors Discharge?*

■ IFI argues that pursuant to *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) its lien passes through the bankruptcy and is

---

8. This chart is based upon the copies of ledger sheets which were exhibits to the deposition of Charles Bright and attached to Harrison Jewell's Reply to Declaration of Maryann G. Stanton Dated April 16, 1998 and Answer Dated April 22, 1998. [Doc 73]

unaffected by the discharge of the debtors personal liability. IFI's reliance on *Johnson* to claim a lien securing post-petition advances is misplaced in this case.

The facts of the present case are substantially different from *Johnson.* The bank in *Johnson* held a mortgage on the debtors farm. During the course of the Chapter 7, the debtor's personal liability was discharged and nothing was paid on the debt secured by the mortgage. The debtor then filed a Chapter 13 and proposed to pay the amount of the mortgage debt as part of the Chapter 13 plan. The issue in *Johnson* was whether the mortgage lien, which after the Chapter 7 discharge was enforceable only against the debtors property, would support a claim in a Chapter 13. The Supreme Court answered the question in the affirmative. 501 U.S. at 85–86, 111 S.Ct. 2150. Unlike the bank in *Johnson,* all of the pre-petition debt owed to IFI was paid within 52 days of the date the bankruptcy petition was filed. Because the debt was paid, not discharged, the lien did not ride through as in *Johnson,* but was satisfied by payment.

The situation in this case is analogous to a bank secured by equipment and crops. Upon the date of filing the amount of the secured claim is determined. Post filing, proceeds from the sale of the crop are received and applied to the pre-filing debt. If the pre-filing debt is paid in full, then the banks lien on the equipment and crop is terminated because the supporting debt has been satisfied. The circumstances of the present case are one step removed from the above example in that it is Fleet Manufacturing which is selling the product and thus generating the income. However, the principal is the same. As of the petition date the amount of the claim was fixed and then was reduced as the outstanding advances were paid by the application of receivables. By November 21, 1994 all of the pre-petition debt had been repaid. At that point the claim was paid in full and the lien against the estate was satisfied.

The Court concludes that there are no issues of material fact with regard to IFI's pre-petition claim secured by the guaranty and deed of trust. The amount of this claim was $244,623.24. The records indicate that the claim has been paid in full. The lien of the deed of trust terminated as to property of the debtors' estate.

E.  *Did the Factoring Agreement, Guaranty and Deed of Trust Taken Together Constitute an Executory Contract?*

■  A troublesome aspect of this case is the behavior of the debtors and IFI after the filing of the bankruptcy petition. IFI continued to advance funds to Fleet. This by itself creates no problem with regard to the bankruptcy. Fleet was not in bankruptcy and free to make whatever financial arrangements with IFI it deemed appropriate. The problem arises when the debtors personal guaranty and deed of trust are brought into the picture. IFI and the debtors apparently assumed that guaranty and deed of trust secured post-petition advances from IFI to Fleet. The debtors and IFI were in essence treating the guaranty and deed of trust as an executory contract. Professor Vern Countryman defined an executory contract as follows:

> a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Vern Countryman, *Executory Contracts in Bankruptcy,* (Part I) 57 Minn.L.Rev. 439, 450 (1973). The Ninth Circuit has utilized Countryman's definition in several cases. *In re Pacific Express Inc.,* 780 F.2d 1482, 1487 (9th Cir.1986).

The deed of trust which Stantons granted IFI provides that its secures:

> (a) Any and all obligations of Grantors evidenced by that certain Continuing Guaranty and Waiver dated April 22,

1994 executed by Kevin M. Stanton and Maryann G. Stanton as Guarantor(s) to International Factors, Inc. as Grantee and/or any Secured Continuing Guaranty and Wavier, and/or any written personal guaranty executed prior or subsequent hereto in favor of International Factors Inc.

The scope of the guaranty is equally broad.

The undersigned, jointly and severally, unconditionally guaranty to IFI full payment and prompt and faithful performance by the Company of all its present and future indebtedness and obligations to IFI which may arise pursuant to this AGREEMENT. The words "indebtedness" and "obligations" are used herein in their most comprehensive sense and include any and all advances, debts, obligations, liabilities, duties and performance of the Company heretofore; whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, whether the Company may be liable or obligated individually or jointly with others....

The circumstances created by the Factoring Agreement, deed of trust and guaranty meet the requirements of the Countryman definition of an executory contract. The nature of the liability is redefined with each transaction subject to the guaranty. Further, the guaranty is subject to cancellation. Therefore, there is always a issue as to the future performance due. Likewise, the obligations of IFI are constantly changing with the each new advance request. Thus, there is always performance due from each side. This can be contrasted to a single advance note secured by a deed of trust. Once the note and deed of trust are executed and the advance made, the contract is no longer executory. No further performance is due or can be required of the lender. The only performance due is that of repayment by the borrower.

A trustee may not assume an executory contract if it is a "contract to make a loan,

or extend other debt financing or financial accommodations, to or for the benefit of the debtor or to issue a security of the debtor." 11 U.S.C. § 365(c)(2). The term "financial accommodation" is not defined by the code. It has been defined as "[t]he obligation to pay money on the obligation of another." *In re Adana Mortgage Bankers,* 12 B.R. 977 (Bankr.N.D.Ga.1980). Examples of arrangements that have been held to be financial accommodations include: a letter of credit *In re Swift Aire Lines, Inc.,* 30 B.R. 490 (9th Cir. BAP 1983) and; a grain dealers surety bond *In re Wegner Farms,* 49 B.R. 440 (Bankr. N.D.Iowa 1985).

The Ninth Circuit in *In re Sun Runner Marine Inc.,* 945 F.2d 1089 (9th Cir.1991) determined that a financial accommodation existed based upon facts that were very similar to the facts in this case. Sun Runner had a flooring arrangement with Transamerica, under which Transamerica loaned retail boat dealers the purchase price of the boats they purchased from Sun Runner. Transamerica took a lien on the boat and Sun Runner agreed to pay the loan balance in the event of a default by the boat dealer. The Court held that Sun Runner's agreement to pay the loan balance of the dealer was in the nature of a guaranty or suretyship and constituted a financial accommodation.

The circumstances in this case are fundamentally the same. IFI was providing financing to Fleet. To induce IFI to provide the financing, the debtors first gave IFI a personal guaranty and then secured the guaranty with a deed of trust on their residence. The debtors made the same promise that Sun Runner made, to pay in the event that the third party did not pay.

The policy underlying the prohibition in 11 U.S.C. § 365(c)(2) is not only protection of the non-debtor party to the financial accommodation but also protection of the unsecured creditors. 945 F.2d at 1093. In the present case it is the unsecured creditors of the estate who are protected by the

rule. The debtors and IFI without court approval created liabilities which IFI claims should be paid from the proceeds of the sale of the debtor's residence. If IFI's position is adopted, the estate will be deprived of a significant asset without proper notice or court authorization. An estate cannot be fairly, efficiently or effectively administered when the assets are disappearing in this fashion. The Bankruptcy Code, national rules and the local rules and procedure of the Eastern District of Washington are designed to give adequate notice of circumstances and events which impact the interests of creditors and the administration of an estate.

■ Had the debtors sought to assume the guaranty and deed of trust the request would have been denied based upon the prohibition in section 365(c)(2). While the debtors could not assume the contract, they and IFI were not without potential avenues to achieve their goal. The Bankruptcy Code allows post-petition financing and encumbering of estate assets through the provisions of 11 U.S.C. § 364. However, critical to the operation of Section 364 is the concept of adequate notice of the proposed financing arrangement and disclosure of the terms. Section 364 and the implementing rules, protect the estate and its creditors from undisclosed agreements and arrangements which adversely impact or drain the estate of its assets.

If IFI and the debtors had wanted to proceed post-petition with the guaranty and deed of trust, the appropriate approach would have been to give notice and seek approval of the arrangement under 11 U.S.C. § 364.

The Court concludes that the debtors secured guaranty of Fleet debt is an executory contract in the form of a financial accommodation and thus is not assumable. Therefore, there is no legal basis for encumbering the estate with the additional debt created by post-petition advances from IFI to Fleet.

**F. *Did the Post-petition Advances Made by IFI in Reliance upon the Secured Guaranty Amount to a Transfer of Estate Property Subject to Avoidance under 11 U.S.C. 549?***

■ The Chapter 7 Trustee takes the position that post-petition advances from IFI to Fleet which were secured by debtors personal guaranty and deed of trust were a transfer of estate property subject to avoidance pursuant to 11 U.S.C. § 549(a). Section 549(a) allows a trustee to avoid a post-petition transfer of property of the estate which is not authorized by either the court or the Bankruptcy Code. Analysis of a Section 549 question requires the examination of several factors. To assist in the analysis the Court adopts the following four part inquiry:

> (1) whether a transfer of property occurred; (2) whether the property was property of the estate; (3) whether the transfer occurred after the commencement of the case; and (4) whether the transfer was authorized by the court or the Bankruptcy Code.

*In re LWMcK Corp.*, 196 B.R. 421, 423 (Bankr.S.D.Ill.1996).

**1. *Has a transfer of property occurred?***

■ The Bankruptcy Code defines "Transfer" as follows:

> "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption;

11 U.S.C. § 101(54). The definition of "transfer" in the Bankruptcy Code is broad. *In re Lelon Dietz*, 94 B.R. 637, 642 (9th Cir. BAP 1988). What constitutes a transfer and when it is complete is a matter of federal law. *In re Joseph Mora*, 218 B.R. 71, 74 (9th Cir. BAP 1998).

A cashiers's check purchased by the debtor pre-petition but not received and

negotiated by the creditor until after the case was filed has been held to be a transfer. *In re Joseph Mora*, 218 B.R. at 76. In the case of *In re Lloyd Dreiling*, 233 B.R. 848 (Bankr.D.Colo.1999), the Bankruptcy Court, held that the post-petition restructuring of a non-debtor corporation involved an avoidable transfer. *Dreiling* was the settlor of a revocable trust to which he transferred, pre-petition, stock he owned in a family corporation. At the time the bankruptcy petition was filed the trust owned 75% of the outstanding stock of the corporation. Post-petition, without notice to the Chapter 7 Trustee, the corporation was restructured so that the amount of outstanding shares was doubled while the holdings of the trust did not increase. The effect of the restructure was to reduce the percentage of total shares owned by the trust from 75% to 43.5%. The court explained its ruling that a transfer has occurred as follows:

> The evidence at trial showed that the value per share of the stock in the hands of the Chapter 7 Trustee was higher if the Trustee held a majority interest. Thus, after the restructure, the value of each share held by the Chapter 7 Trustee was worth less. This constituted a transfer of property of the estate under 11 U.S.C. § 549. Such transfer was not authorized by the Court or by the Bankruptcy Code. And it took place after the Debtor's bankruptcy petition was filed and the case was still open and pending. The intent of the parties effecting the transfer is irrelevant under § 549. (Citation omitted.) Likewise, fraud is not an element for a cause of action by the Trustee under § 549. (Citation omitted.)

233 B.R. at 876. What sets *Dreiling* apart from many other transfer cases is the bankruptcy estate's ownership interest was diluted not conveyed.

▇▇ The post-petition advances by IFI to Fleet secured by the debtors' residence present a transfer similar to that in *Dreiling*. The effect of each advance was to increase the amount of debt secured by the debtors' residence and thus decrease the bankruptcy estate's equity in the residence. Each advance was a transfer of the estate's equity to IFI. As the total advances increased the amount of equity available for distribution to the unsecured creditors decreased. The Court concludes that a transfer occurred.

2. *Was property of the estate involved?*

An avoidable transfer under Section 549(a) must involve property of the estate. Property of the estate is defined in Section 541(a) as, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The definition also includes, "[a]ny interest in property that the estate acquires after the commencement of the case". 11 U.S.C. § 541(a)(7). The debtors residence and any equity the debtor had in their residence were property of the estate. As of commencement of the case, the estates equity was limited due to IFI's secured claim. The receipt and application of payments on pre-petition accounts reduced IFI's secured claim and correspondingly the estate's equity increased. While the debtor's equity may have been limited as of the commencement of the case, the post-petition payments received by IFI from the accounts assigned by Fleet pre-petition paid off the secured claim of IFI. As that claim was paid down the estate's equity increased. Thus, by November 21, 1994 the estate had a sizable equity. As a consequence there was property of the estate subject to transfer by the continued dealings of IFI and Fleet.

3. *Was the transfer made after the commencement of the case?*

There is no dispute that the guaranty and deed of trust were created prior to the commencement of the case. Further, there is no dispute that pre-petition IFI was making advances to Fleet and receiving payments from Fleet's customers all subject to the secured guaranty. The par-

ties are in agreement that the activities giving rise to this dispute were advances that were made after the bankruptcy petition was filed. Therefore, the Court holds that the transfers were made after the commencement of the case.

### 4. *Was the transfer authorized by the Court or the Bankruptcy Code?*

■ The record in this matter is clear that neither the debtors nor IFI sought Court approval for continuation of the secured guaranty of the IFI—Fleeting factoring arrangement. No motion for approval of post-petition financing under 11 U.S.C. § 364 was filed much less approved. The debtors have stated that they were under the impression that the continuation of the secured guaranty fell in to the category of ordinary course of business. While 11 U.S.C. § 1108 authorizes continued operation of a business by a debtor in possession in a Chapter 11 and 11 U.S.C. § 363 allows the use, sale or leasing of property in the ordinary course, neither of these sections operates in a vacuum. They operate subject to the other provisions of the Code. Section 364 is very clear that unsecured borrowing without prior court approval is acceptable. 11 U.S.C. § 364(a). However, any borrowing other than the unsecured borrowing under subsection (a) must be approved by the court after notice and hearing. 11 U.S.C. § 364(b)–(c). The Court holds that neither the Court nor the Code authorized the continued use of the secured guaranty post-petition.

### 5. *All Elements necessary for Avoidance under 549 are present.*

All four of the elements of a an avoidable transfer are present. The secured guaranty of the IFI—Fleet factoring agreement resulted in a transfer of estate property every time an advance was made under the factoring agreement. These transfers were not approved by the Code or the Court. The transfers are avoided pursuant to Section 549(a).

### 6. *Effect of Avoidance*

In this case the effect of the avoidance is to restore to the estate the equity in the real estate. Since the transfers have been avoided IFI does not have a lien on estate property for post-petition advances by virtue of the guaranty and deed of trust. Likewise, IFI does not have a lien on the proceeds of the sale of the residence as a result of pre-petition advances, since their pre-petition secured claim has been paid in full. The Chapter 7 Trustee has not sought to assess any liability under 11 U.S.C. § 550 and thus the Court does not address any issues that might arise under that section.

### G. *The Conversion From Chapter 11 to Chapter 7 Does Not Revive IFI's Lien.*

■ This case was filed as a Chapter 11 and operated as such until May 11, 1996, at which time the case was converted to one under Chapter 7. When a case is converted from one chapter to another the conversion acts as an order for relief in the chapter to which the case is converted. The converted case is treated as if it had been filed as of the original petition date. 11 U.S.C. § 348(a). Claims that arise post-petition but pre-conversion are treated as follows:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the filing of the petition.

11 U.S.C. § 348(d).

IFI argues that section 348(d) applies and that it has a secured claim against the debtor based upon the guaranty and deed of trust. This argument is in error. One of the effects of the language of section 348(d) in a conversion from a Chapter 11

to Chapter 7 is to allow discharge of the pre-conversion debt under 11 U.S.C. § 727(a). The discharge granted under section 727(a) includes all debts which arose before the date of the order for relief. 11 U.S.C. § 727(b). Therefore, any personal liability debtors would have for post petition advances under the factoring agreement would be discharged pursuant to section 727. Section 348(d) must be read in context with the rest of the Code. If section 549 is going to have any meaning, then transfers avoided under section 549(a) should not be subject to revival under section 348(d). The correct reading of these sections is that avoidance under section 549(a) may create a pre-conversion claim and to the extent it does, section 348(d) brings that claim within the scope of the discharge granted by section 727. What section 348(d) does not do is create a pre-petition secured claim for IFI. As the Court determined in an earlier portion of this opinion, IFI's pre-petition secured claim was fully paid by November 21, 1994.

At best IFI has an unsecured claim against the estate for the post-filing pre-conversion period. The Court does not decide in this opinion the validity or extent of that claim.

## H. *Did the Transfer Constitute a Violation of the Automatic Stay?*

██ The Chapter 7 Trustee argued that IFI's reliance on the guaranty and deed of trust during the post-petition period constituted a violation of the automatic stay. The debtors active willing participation in the factoring agreement between IFI and Fleet with knowledge and expectation that the guaranty and deed of trust were operative does not support a finding that there was a violation of the automatic stay.

## VI

*Remaining Issues Unresolvable at this Time*

The parties to this adversary proceeding and the debtors have raised several issues in their briefs and other pleadings which are not appropriately postured for resolution at this time.

The debtors and the parties to this adversary proceeding contest the right to $30,000.00 of the proceeds from the sale of the debtors' residence upon which the debtors claim their homestead exemption. To adjudicate this dispute between the debtors and the parties to this adversary proceeding it would be necessary for the debtors to be a party to this adversary proceeding. They are not. On November 8, 1996, debtors, acting through their counsel, filed a motion asking the Court to dismiss this adversary proceeding as it applied to them personally. The motion stated the following grounds for dismissal:

> There is no relief requested against them individually, and they are not indispensable parties. Their interest, whatever it may be is represented by the Trustee. They wish to avoid the expense of any further participation in the law suit.

All the parties agreed to this dismissal at the hearing scheduled on the debtors' motion on December 19, 1996. An order dismissing debtors from this adversary proceeding was entered February 27, 1997. The debtors voluntary participation, unchallenged and unquestioned by the parties, in this matter since that time has not made them once again a party to the adversary proceeding in the face of the clear, unequivocal and unappealed order to the contrary. The debtors right to the $30,-000.00 residence proceeds will have to be resolved when all the parties interested therein have been joined in the resolution, perhaps at the time of proposed distribution of the estate's property.

Another issue raised herein is IFI's assertion that it is entitled to priority as an administrative claim in the bankruptcy case. Allowance as an administrative claim would require a motion in the main bankruptcy case, notice to all parties on

the master mailing list with an opportunity for objection and a hearing. 11 U.S.C. § 503(a) & (b). IFI has followed none of these procedural steps. As a result IFI's request for allowance as an administrative expense in this case is not properly before the court at this time.

Finally the parties' contentions in regard to the possible disposition of the estate assets should await the trustee's proposed disposition.

## VII

### Conclusion

There are no issues of material fact in dispute between the parties herein. As a matter of law the Court holds that IFI's pre-petition secured claim against the estate has been paid in full and the lien satisfied and discharged. The advances made from IFI to Fleet after the filing of the bankruptcy petition are not secured by the property of the estate. The guaranty and deed of trust constitute an executory contract but were not assumable because they are a financial accommodation. The continued reliance by the debtors and IFI on the guaranty and deed of trust post-petition resulted in a transfer of estate property which is avoided under 11 U.S.C. 549(a). The post-petition activities involving the guaranty and deed of trust did not constitute a violation of the automatic stay. The Chapter 7 Trustee's motion for summary judgement is granted as set forth above. IFI's motion for summary judgement is denied.