199 F.3d 1024 (9th Cir. 1999)
 In re JOSEPH A. MORA; TOSHIKO MORA, Debtors.
JOSEPH A. MORA; TOSHIKO MORA, Plaintiffs-Appellants,
v.
GILBERT VASQUEZ, Trustee; JAMES A. DUMAS, JR.; BANCBOSTON MORTGAGE CORPORATION, a corporation, Defendants-Appellees.
 No. 98-55636
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted November 1, 1999--Pasadena, California
Filed December 21, 1999
 
 Steven A. Schwaber, Los Angeles, California, for plaintiffs-appellants Joseph A. Mora and Toshiko Mora.
 Richard Malatt, Los Angeles, California, for defendants-appellees Gilbert Vasquez, Trustee, and James A. Dumas, Jr.
 Tyrone Mitch Washington, Jacksonville, Florida, for defendant-appellee BancBoston Mortgage Corporation.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel; Russell, Jones, and Hagan, Judges, Presiding. BAP No. CC-97-01216-RuJoHa
 Before: Myron H. Bright,* Stephen Reinhardt, and Stephen S. Trott, Circuit Judges.
 BRIGHT, Senior Circuit Judge:
 
 
 1
 The debtors-appellants in this case, Joseph and Toshiko Mora, mailed a cashier's check in the sum of $24,660.27 to their home (and homestead) mortgage lender, BancBoston Mortgage Corporation ("BancBoston") and the next day filed for bankruptcy. The debtors intended for the mailing to constitute a prepetition transfer of assets to BancBoston and to be free from claims of creditors as incorporated into the homestead exemption.[1] When, upon demand, BancBoston paid over those funds to the trustee in bankruptcy, the debtors brought this action to recover the funds from the trustee. The bankruptcy court ruled in favor of the debtors, but the Bankruptcy Appellate Panel ("BAP") reversed on appeal, holding that the date of mailing did not constitute delivery to the mortgagee, and therefore, the debtors engaged in an avoidable post petition transfer under 11 U.S.C. S 549(a) (1994).[2] This court has jurisdiction of this appeal pursuant to 28 U.S.C.S 158(d) (1994).
 
 
 2
 The issue before this court is a narrow one: does a transfer of an interest in a cashier's check occur at the time the check is mailed, for purposes of avoiding post petition transfers under section 549(a) of the United States Bankruptcy Code? The BAP held that the transfer does not occur upon mailing, and we now review that holding. See In re Mora , 218 B.R. 71 (BAP 9th Cir. 1998). We agree with the BAP that the act of mailing a cashier's check does not constitute "delivery" for purposes of effectuating a transfer under section 549(a) because a cashier's check is not delivered until it is in the physical possession and control of the payee. Thus, we AFFIRM the judgment of the BAP.
 
 I.
 
 3
 Debtors filed their petition for bankruptcy under Chapter 7 of the Bankruptcy Code on March 2, 1995 pursuant to 11 U.S.C. S 101, et seq. The parties stipulated to a number of undisputed facts before the bankruptcy court. The parties agreed that debtors mailed a payment to their mortgage lender, BancBoston, on March 1, 1995, the day prior to filing bankruptcy. Debtors further stipulated that they made the mortgage payment by cashier's check in the amount of $24,660.27 and mailed the check through the United States Post Office. Both parties also stipulated to the fact that the cashier's check arrived at the offices of BancBoston on March 6, 1995. BancBoston credited the check to debtors' account on March 7, 1995.
 
 
 4
 Upon learning of the transfer at a meeting of the creditors, the trustee wrote to BancBoston, claiming that the $24,660.27 was an avoidable postpetition transfer of estate property under section 549(a) and demanding that BancBoston return the money to the estate. In response, BancBoston mailed a check in the amount of $24,660.27 to the trustee and charged the debtors' mortgage account. Debtors Mora then brought this action in bankruptcy court seeking declaratory relief, claiming that the $24,660.27 was not the estate's property and that the trustee had improperly obtained the money from BancBoston. BancBoston failed to appear during the course of this action. The record contains no evidence of when the check arrived at BancBoston's mailbox at the Van Nuys Post Office in Van Nuys, California[3].
 
 
 5
 The bankruptcy court held that the debtors had made a prepetition transfer because it found that the "delivery" necessary to constitute a "transfer" under the Code occurred at the moment the debtors placed the cashier's check in the mail. Because, according to the bankruptcy court, BancBoston retained "constructive possession" of the cashier's check from the time debtors mailed it, the transfer occurred on March 1, 1995, and the trustee was not entitled to reclaim the mortgage payment. See In re Mora, 218 B.R. at 74. The BAP reversed, stating that a transfer under section 549(a) only occurs once the payee physically controls the check. Id. In reversing, the BAP expressly rejected the bankruptcy court's finding that mailing a cashier's check through the Post Office renders the payee in constructive possession of the money. Id.
 
 II.
 
 6
 The determination of when an avoidable post petition transfer of estate property occurs is a question of law and therefore reviewed de novo. See Barnhill v. Johnson, 503 U.S. 393, 397 (1992). Section 549(a) of the Code permits the trustee to avoid a post petition transfer of estate property, and section 550(a)(1) permits a trustee to recover the amount of the avoidable transfer from the initial transferee. 11 U.S.C. SS 549(a), 550(a) (1994); In re Montross , 209 B.R. 943, 94748 (BAP 9th Cir. 1997). If a trustee seeks to recover a postpetition transfer under section 549, the trustee must show that a postpetition transfer occurred. In re Allen, 217 B.R. 952, 955 (Bankr. M.D. Fla. 1998); see In re Dominion Corp., 199 B.R. 410, 412 (BAP 9th Cir. 1996). Therefore, the trustee must show that a transfer occurred after the filing of the bankruptcy petition and that the transfer was not authorized by either the bankruptcy court or the Code. See 11 U.S.C.S 549(a).
 
 
 7
 On appeal, the parties dispute whether the transfer occurred prepetition or postpetition[4]. A "transfer" is broadly defined by the Code as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. S 101(54)(1994). The Supreme Court established in Barnhill that, under section 547(b), the transfer of an ordinary check does not take place until the check is honored. Barnhill, 503 U.S. at 394-95.[5] Although the BAP has distinguished the appropriate treatment of cashier's checks from that of ordinary checks when determining the point at which a transfer takes place, it has done so using Barnhill's rationale. In In re Lee, 179 B.R. 149, 161 (BAP 9th Cir. 1995), aff'd, Hall-Mark Elecs. Corp. v. Sims, 108 F.3d 239 (9th Cir. 1997), the BAP determined that the transfer of a cashier's check for purposes of section 547(b) occurs at the time a cashier's check is "delivered" rather than at the time the check is honored. The BAP defined the point of transfer as the point of delivery because it determined that the obligation to pay a cashier's check is fixed at delivery (when payee receives the check), whereas the obligation to pay on an ordinary check is not fixed until the check is honored. Compare Barnhill, 503 U.S. at 398-400 (determining that obligation to pay on an ordinary check is fixed when honored), with In re Lee, 179 B.R. at 158-63 (determining that purchaser of cashier's check retains property interest in cashier's check until delivery and that obligation to pay is fixed upon payee's receipt of cashier's check). In re Lee equated the date of delivery with the date the payee receives the cashier's check and obtains physical possession of the instrument. See In re Lee, 179 B.R. at 160-61.
 
 
 8
 The debtors ask this court to hold that physical possession is not required for the transfer to take place. However, the debtors offer no legal basis for such a holding. Furthermore, the debtors have not presented facts that would require such a conclusion under either Lee's or Barnhill's rationales. According to the Supreme Court, delivery requires "an unconditional transfer of the debtor's interest in [the] property . . . ." See Barnhill, 503 U.S. at 399. Placing a cashier's check in the mail does not unconditionally transfer the debtor's interest in it for a number of reasons. First, Barnhill's concerns about intervening events between delivery and presentment of a regular check parallel legitimate concerns about potential intervening events between the mailing and physical possession of a cashier's check. See Barnhill, 503 U.S. at 399 ("Myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored."). A variety of mishaps could occur between the time of mailing and the time BancBoston gains control over the check that would frustrate delivery. For example, the cashier's check could be lost in the mail or the check could be converted by some third party before reaching BancBoston.[6] Second, it is not clear that the purchaser of the check no longer has control or any means of regaining control over the check. Although a purchaser cannot stop payment of a cashier'scheck, he or she can seek to have it canceled, and the bank may accommodate him or her. See In re Lee, 179 B.R. at 161. Furthermore, Post Office regulations allow the payee-sender to recall the cashier's check from the mail under 39 C.F.R. S 111.1 (incorporating section D030 of Domestic Mail Manual).[7] The possibility that the payee can recall the cashier's check from the Post Office demonstrates that the debtor has not fully relinquished all rights and interests in the cashier's check upon mailing.[8] In other words, merely dropping a check in the mail -even if it is a cashier's check -does not unconditionally guarantee receipt by and payment to the payee; therefore, mailing cannot constitute "delivery" for purposes of determining whether there was a transfer.
 
 
 9
 This court does not decide the question of whether delivery into BancBoston's Van Nuys post office box constituted delivery for purposes of section 549(a). It may be that delivery into BancBoston's post office box would amount to sufficient control over the cashier's check to constitute "delivery" for purposes of section 549(a). That question is not appropriately before this court because the debtors-appellants stipulated that the cashier's check arrived at BancBoston's offices on March 6, 1995. Furthermore, debtors did not raise the question before the bankruptcy court, so it is not properly raised upon appeal. See Rothman v. Hosp. Serv. of S. Cal., 510 F.2d 956, 960 (9th Cir. 1975) ("[A]n appellant may not present arguments in the Court of Appeals that it did not properly raise in the court below."). Finally, the debtors have not presented any facts from the record to prove that the cashier's check arrived in BancBoston's post office box prior to their filing of their bankruptcy petition. For all of these reasons, we agree with the BAP's refusal to consider the argument that the debtors delivered the cashier's check on March 2, 1995, when they assert that the Post Office placed it in BancBoston's Van Nuys post office box. See In re Mora, 218 B.R. at 75 n.5 (BAP 9th Cir. 1998).
 
 
 10
 The trustee showed, on the basis of stipulated facts, that the debtors mailed the cashier's check prior to filing for bankruptcy but that BancBoston did not receive the check until after the filing, on March 6, 1995. Because placement in the United States mail system does not constitute "delivery" of a cashier's check to the payee under section 549, this court must hold that debtors made delivery to BancBoston on March 6, 1995. Therefore, the transfer was postpetition, and is avoidable under section 549(a).
 
 
 11
 We, therefore, AFFIRM the judgment of the BAP which directs the bankruptcy court to enter a judgment for the trustee and dismiss the debtors' action.
 
 
 
 Notes:
 
 
 *
 The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.
 
 
 [1]
 The debtors exempted all of the equity in their home under a declared homestead exemption of $100,000.
 
 
 [2]
 The text of 11 U.S.C. S 549(a) states:
 (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
 (1) that occurs after the commencement of the case; and
 (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
 (B) that is not authorized under this title or by the court.
 
 
 [3]
 BancBoston had directed debtors to make all mortgage payments to a post office box in Van Nuys, California. On appeal, the debtors ask this court to take judicial notice, under Fed. R. Evid. 201, of the fact that first class mail is generally delivered overnight to locally designated cities. Although it may be true that the Post Office advertises its attempt to deliver locally designated mail overnight, this court does not take judicial notice that the Post Office delivered the check in question overnight or that the check was probably delivered overnight. Both propositions are disputable and not appropriately admitted as facts under Rule 201. See In re Blumer, 95 B.R. 143, 147 (BAP 9th Cir. 1988) (explaining when judicial notice is appropriate).
 
 
 [4]
 The parties do not dispute either that: (1) the debtors had an interest in the cashier's check prior to mailing it to BancBoston, or (2) mailing the cashier's check to BancBoston was not authorized by either the Code or the bankruptcy court. See In re Mora, 218 B.R. at 73-74.
 
 
 [5]
 The term "transfer" under section 547(b) is analogous to section 549(a), and therefore case law analyzing one is applicable to analysis under the other. See In re Rainbow Music, Inc. , 154 B.R. 559, 561 (Bankr. N.D. Cal. 1993).
 
 
 [6]
 Debtors argue that if a cashier's check is lost or stolen, the recipient payee's rights are now enforceable against the bank that issued the check rather than the debtor; therefore, all interest in and control over the check rests with the payee. See In re Lee, 179 B.R. at 158-59. The extent to which this argument affects the analysis is tenuous at best. First, in California a bank may revoke acceptance of a cashier's check under certain circumstances such as a mistaken issuance of the check. See In re Lee, 179 B.R. at 159. If there is such a mistake, the purchaser can retrieve his money because he retains a property interest in the check until it is properly delivered. Id. Second, one could imagine a situation in which BancBoston was unaware that the check was sent and then lost or stolen; there, the debtor would need to re-exert control over the cashier's check to correct the mistake or cancel the check and have the bank re-issue a proper one. For a variety of conceivable reasons, loss or conversion of the check in the mail would prevent the unconditional transfer of the check.
 
 
 [7]
 Although the trustee did not argue before the bankruptcy court that postal regulations permit a sender to recall mail in the Post Office mail system, we take judicial notice of this fact. The trustee points out that these postal regulations are incorporated into the Code of Federal Regulations, and they are not subject to reasonable dispute. Furthermore, the trustee points out that these regulations were introduced in response to the bankruptcy court's holding, which apparently rested on a factually unsound basis.
 
 
 [8]
 The debtors have at times advanced the notion that BancBoston held the cashier's check in "constructive possession" because the Post Office operated as an agent of BancBoston. The fact that the debtors could retrieve the cashier's check from the mail reveals the failure of the analogy of the Post Office to the role of BancBoston's agent. Not only does the Post Office serve the general public rather than any individual person or corporation, but the whole point of arguing that the Post Office functions as BancBoston's agent is to show that the debtors had relinquished all control over the instrument. This situation reflects a closer analogy between the Post Office and the debtors' agent than that between the Post Office and BancBoston's agent.