UNITED STATES of America,
Plaintiff–Appellee,

v.

Abel Aguirre MARISCAL,
Defendant–Appellant.

No. 01–10326.

United States Court of Appeals,
Ninth Circuit.

Submitted March 11, 2002.*

Filed April 1, 2002.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Bram Jacobson, Assistant Federal Public Defender, Phoenix, AZ, for the defendant-appellant.

Joan G. Ruffennach, Assistant United States Attorney, Phoenix, AZ, for the plaintiff-appellee.

Before REINHARDT, NOONAN, and FERNANDEZ, Circuit Judges.

## OPINION

FERNANDEZ, Circuit Judge.

Abel Aguirre Mariscal appeals his conviction for being an illegal alien in possession of a firearm. *See* 18 U.S.C. §§ 922(g)(5)(A); 924(a)(2). He contends that the district court erred when it denied his motion to suppress evidence derived from a car stop which was not based on reasonable suspicion. We agree and reverse.

## BACKGROUND

On October 6, 2000, Officers Luebkin, Crosier, Knudson and Wetzel of the Phoenix Police Department's Special Assignments Unit (SAU) were conducting undercover surveillance of a residence and a vehicle parked at that residence in the City of Phoenix. They were in plain

clothes and were driving unmarked vehicles. Officers Garrett and Segerstrom, who were in uniform and driving a marked patrol car, were standing by to assist the SAU officers by making a traffic stop, if requested to do so.

At 9:41 p.m., Officer Knudson observed the vehicle, a Ford LTD Crown Victoria, pull away from its location, head North on 53rd Avenue, and then head East on McDowell Road in the curb lane. He notified the patrol officers of that, and they positioned themselves at a stop sign at 52nd Drive and McDowell Road. From that position, they saw the Crown Victoria come along McDowell Road and make a right turn without using mechanical or hand signals. Officer Luebkin, whose exact position does not appear on the record, also saw that turn.[1] Officer Garrett and his partner immediately made a U-turn, followed the Crown Victoria into the Motel 6 parking lot, activated the patrol car's overhead lights and its spotlight, and came up as the Crown Victoria was parked.

Mariscal was the only passenger in the backseat of the Crown Victoria, and upon a subsequent search a 45–caliber handgun was found concealed behind the center armrest of that seat. Mariscal was placed under arrest for possession of a concealed weapon. He later confessed that it was his, and that he was in this country illegally. This prosecution followed.

Mariscal filed a motion to suppress "all evidence and statements" arising out of the stop because there was no reasonable

suspicion to stop the Crown Victoria.[2] He argued that although the stop was based on a failure to signal the turn, there was no offense committed because there was no indication that the turn may have affected traffic. See Ariz.Rev.Stat. § 28–754(A). While there was no evidence of traffic (Garrett was just watching the Crown Victoria), the district court observed that "McDowell Road is a heavily traveled east-west street in the City of Phoenix," and denied the motion to suppress.

A bench trial based upon the police reports followed, and Mariscal was found guilty and duly sentenced. This appeal ensued.

## STANDARD OF REVIEW

■ We review the denial of the motion to suppress evidence based upon a finding of reasonable suspicion de novo. See United States v. Dorais, 241 F.3d 1124, 1128 (9th Cir.2001). We review the district court's factual findings for clear error. See United States v. Wallace, 213 F.3d 1216, 1219 (9th Cir.), cert. denied, 531 U.S. 974, 121 S.Ct. 418, 148 L.Ed.2d 323 (2000). "In reviewing a motion to suppress, we may affirm on any basis fairly supported by the record." United States v. Smith, 155 F.3d 1051, 1055 n. 5 (9th Cir.1998).

## DISCUSSION

■ Mariscal grumbles that the stop of the Crown Victoria was pretextual, but

---

1. The record is somewhat unclear because Luebkin indicated that he saw the vehicle turn into the Motel 6 parking lot, while Garrett saw it turn into 52nd Drive, but also indicated that there was an access drive. Still, the reasonable inference is that there was one turn, as the district court appears to have assumed.

2. On appeal, the parties do not join issue to dispute whether the result of an improper

stop would be suppression of all fruits of that stop, including Mariscal's confession. Rather, they take that as a given. So will we for purposes of this case. Thus, there is no need to enter other labyrinths, such as attenuation theory. See, e.g., Anderson v. Calderon, 232 F.3d 1053, 1071–72 (9th Cir.2000), cert. denied, — U.S. ——, 122 S.Ct. 580, 151 L.Ed.2d 451 (2001) (discussion of attenuation).

recognizes, as he must, that the subjective motives of the officers do not invalidate an otherwise proper stop. All that is required is that, on an objective basis, the stop "not be unreasonable under the circumstances." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). That means "that the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops." *United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000). And, as we have said:

> Reasonable suspicion is formed by "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also "be grounded in objective facts and be capable of rational explanation."

*Id.* (citations omitted); *see also United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir.2000).

■ Because most people are not such paragons of driving skill and virtue that they consistently adhere to each one of the complex laws relating to the operation of motor vehicles, there are many opportunities to stop targeted vehicles like the Crown Victoria. But those opportunities are not limitless. Suspicions must be reasonable, and they cannot be if they are not sufficient to cause an officer to believe that the driver has done something illegal.

■ If an officer simply does not know the law, and makes a stop based upon objective facts that cannot constitute a violation, his suspicions cannot be reasonable. The chimera created by his imaginings cannot be used against the driver. So, when an officer thought that a Baja California vehicle registration statement had to be visible from the rear, whereas the Baja California law required that it be on the upper right corner of the windshield, the officer's mistaken belief could not "justify the stop under the Fourth Amendment." *Lopez–Soto*, 205 F.3d at 1106. Similarly, when an officer thought that Michigan required cars to have two license plates, but it indeed only required one, a stop based on the two-plate theory was not based on reasonable suspicion. *Twilley*, 222 F.3d at 1096. Simply put:

> A suspicion based on such a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because "the legal justification [for a traffic stop] must be objectively grounded." In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment.

*Id.* (citations omitted); *see also United States v. King*, 244 F.3d 736, 741–42 (9th Cir.2001) (a mistaken belief that a driver's conduct violated the law could not support a reasonable suspicion that a crime had been committed, even if the officer otherwise behaved reasonably).

■ [4] That does not mean that the officer must have a precise appreciation of the niceties of the law. If the facts are sufficient to lead an officer to reasonably believe that there was a violation, that will suffice, even if the officer is not certain about exactly what it takes to constitute a violation. *See Wallace*, 213 F.3d at 1220–21 (where front windows could be tinted to a certain extent, but officer thought they could not be tinted at all, he had probable cause to stop a vehicle whose windows were tinted to the point that an officer who really knew the law would believe them to be excessively tinted); *see also United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir.2001); *United States v. Johnson*, 242 F.3d 707, 709–10 (6th Cir.), *cert. de-*

*nied,* —— U.S. ——, 122 S.Ct. 145, 151 L.Ed.2d 96 (2001); *United States v. Cashman,* 216 F.3d 582, 586–87 (7th Cir.2000).

■ Moreover, a mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot. *See Dorais,* 241 F.3d at 1130–31 (where facts known to officer gave rise to a reasonable suspicion that a car was stolen, the ultimate determination that it was not did not make the stop improper).

The case at hand is somewhat different from those which have come before because it is not entirely clear that Officer Garrett made a mistake about the law of Arizona, but as far as the record shows it is clear that if he did understand the law, the facts known to him could not justify a traffic stop. We will explain.

While it is commonly thought that a person must give a turn signal of some kind when he turns his vehicle, that is not quite true in Arizona. What Arizona law actually provides is that "[a] person shall not so turn any vehicle without giving an appropriate signal in the manner provided by this article in the event any other traffic may be affected by the movement." Ariz.Rev.Stat. § 28–754(A). Plainly, if a violation was to be suspected, there must have been traffic, and there must have been some possibility that the traffic would be "affected by the movement" of the Crown Victoria when it made its right-hand turn off of McDowell Road. The government does not argue to the contrary. Yet there was not a shard of evidence that any vehicle other than the Crown Victoria itself was affected by the right turn.

The district court recognized this gap in the evidence of reasonable suspicion that a crime had been committed, and filled the gap with the observation that "McDowell Road is a heavily traveled east-west street in the City of Phoenix." It did so, however, without the benefit of any evidence to that effect in the record. How could it do that? It almost sounds as if the court merely injected some sort of personal driving experience into the case. That would not only be unsatisfactory,[3] but it would also suffer from the defect that nobody can tell if the judge's experience was at the location in question in autumn in the late hours of the night—9:40–9:45 p.m. But, says the government, the district court merely took judicial notice of the fact without saying so, and we can affirm on any ground supported by the record. The latter part of that statement is true,[4] but it does not allow us to confer the obsidional crown upon the government in this case. The conviction remains besieged because the principles of judicial notice cannot save it. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b). As to the first branch, nothing before us explains how the disputed question of whether there was traffic that could have been affected by the Crown Victoria's right-hand turn at the corner of McDowell Road and 52nd Drive between 9:40 and 9:45 p.m. on October 6, 2000, can be answered by generally known information within the territory of the district court. We must reject judicial notice of that "fact" just as quickly as we have rejected the supposed fact that the post office generally delivers mail overnight "to locally designated cities." *Mora v. Vasquez (In re Mora),* 199 F.3d 1024, 1026 n.

---

**3.** *See United States v. Lewis,* 833 F.2d 1380, 1385 (9th Cir.1987).

**4.** *See, e.g., Smith,* 155 F.3d at 1055 n. 5.

3 (9th Cir.1999). It is nothing like the obvious fact that surgery is painful and can have dire consequences. *See Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan,* 64 F.3d 1389, 1395 n. 2 (9th Cir.1995). Nor is it like common knowledge about the general shape of snowmen. *See Lussier v. Runyon,* 50 F.3d 1103, 1114 (1st Cir.1995). Again, it is more like the kind of specific detailed knowledge that we, and other courts, have found unacceptable. *See Mora,* 199 F.3d at 1026 n. 3; *Lussier,* 50 F.3d at 1113–14.

Nor can the other branch of judicial notice save the day. By no means can we resort to some source whose accuracy "cannot reasonably be questioned," in order to decide the traffic issue. *See* Fed. R.Evid. 201(b)(2). Indeed, we have not been directed to any source, text, dictionary, encyclopedia, or otherwise, wherein the facts in question abide. *See, e.g., Pyles v. Merit Sys. Prot. Bd.,* 45 F.3d 411, 415 (Fed.Cir.1995) (judicial notice of the definition of dementia); *cf. Lussier,* 50 F.3d at 1114 (rejecting judicial notice regarding the amount of disability benefits).

In a final attempt to lift the siege, the government sallys forth with the assertion that the police vehicle itself was traffic. We are dubious about that proposition. In Arizona, traffic is defined as "pedestrians, ridden or herded animals, vehicles and other conveyances either singly or together while using a highway for purposes of travel." Ariz.Rev.Stat. § 28–601(26). In some sense a stationary but occupied police car can be said to be using the roadway for travel, inasmuch as it is there for the purpose of moving along the road at some point, but to suggest that Officer

Garrett's car was traveling at the time that the Crown Victoria made its right turn is stretching a point. A dictionary definition of traffic suggests that "circulation" or "flow" or "movement" is referred to by that term,[5] and the Arizona statute has that same flavor.

However, even if the police car in which Officer Garrett sat could be called traffic, there is not a scintilla of evidence that it could have been "affected" by the Crown Victoria's right turn, except, of course, to the extent that the turn energized the officers to swoop down upon their prey. On the facts of this case, when the Crown Victoria made its right turn, the police car was at a standstill on the other side of the street—the right turn could not by any stretch of the imagination have had any effect upon it. Beyond that, one finds it highly unlikely that the Arizona legislature had in mind police officers parked at the side of the road looking for traffic violators when it referred to "traffic [that] may be affected by the movement" of an automobile. Ariz.Rev.Stat. § 28–754(A). A reading of that sort would tend to render the "may be affected" language largely nugatory as a practical matter, and Arizona would not be likely to accept that sort of construction of the statute.[6] *See Federico v. Indus. Comm'n of Ariz.,* 186 Ariz. 382, 388–89, 923 P.2d 848, 854–55 (1996); *Arizona v. Thomas,* 80 Ariz. 327, 333, 297 P.2d 624, 628 (1956).

## CONCLUSION

██ It is the genius of the common law, including the common law of the Constitution, that in the crucible of case-by-case litigation its principles are refined and

---

**5.** Webster's Third New International Dictionary 2423 (1986).

**6.** As to the SAU officers' automobile, there is simply no evidence regarding its location

when the right turn was made, and, again, no evidence to suggest that it was the kind of traffic that could have been affected by that right-hand turn.

the dross is worked out and removed. It is a tedious but a grand process, which relies upon a most sophisticated praxis by all concerned. So it is here; the parties and the district court have worked with us in exploring the limits of *Whren*. At the end of that process, we conclude that where, as here, the objective facts of record demonstrate that no officer could have a reasonable suspicion that the driver of a vehicle had violated a traffic law, the traffic stop was a violation of the Fourth Amendment.

REVERSED and REMANDED.