UNITED STATES of America,
Plaintiff,

v.

Porfirio GONZALES–QUINONEZ,
Defendant.

No. CR03–0525–PHX–JAT.

United States District Court,
D. Arizona.

Aug. 7, 2003.

James Alan Wilson, Esq, Wilson Law Office, Phoenix, AZ, for defendant.

## ORDER

TEILBORG, District Judge.

Pending is Defendant Porfirio Gonazles–Quinonez's Motion to Suppress [Doc. # 10]. The Government filed a response [Doc. # 17] to Defendant's motion, and the Defendant filed a reply [Doc. # 19] to the Government's response. In the Motion to Suppress, Defendant challengers the validity of a traffic stop of the vehicle in which Defendant was traveling. In short, Defendant asserts that the police did not have reasonable suspicion to conduct the traffic stop. Defendant also seeks to suppress evidence obtained and Defendant's statement made following the traffic stop as "the fruit of an illegal detention of defendant's vehicle." [Doc. # 10 at 1.]

*Evidentiary Hearing:* The Court conducted an evidentiary hearing and heard arguments of counsel on August 4, 2003. At the evidentiary hearing, the Government presented the testimony of Officer Steve Powers of the Arizona Department of Public Safety ("DPS"). Defendant's counsel cross-examined Officer Powers, but Defendant did not testify or introduce other evidence at the hearing. Officer Powers is a three-year veteran of the DPS who has been involved in "numerous" traffic

stops along Interstate 10 ("I–10") in Arizona. Many of these traffic stops have involved stolen vehicles, drug smuggling, and smuggling of undocumented aliens. This Court found Officer Powers to be an extremely credible witness.

During the evidentiary hearing, Officer Powers testified about the events of April 15, 2003. According to Officer Powers, at approximately 7:10 a.m. on April 15, 2003, he was traveling eastbound on I–10 near milepost 192 in an marked patrol car. Officer Powers observed a full-sized white Dodge four-wheel-drive pickup with a broken rear driver's-side window traveling westbound on I–10. Officer Powers stated that he could not determine whether there were any passengers in the truck and that he did not observe the ethnicity of the driver.

Officer Powers explained that he was immediately suspicious that the truck may have been stolen because, within the preceding year, he had personally stopped stolen cars with broken side windows and that, in his experience, "most" stolen vehicles have broken side windows. Thus, in his experience: (i) it was common for car thieves to break a side window in order to gain access to a vehicle; (ii) Dodge trucks are popular with car thieves because they are easy to steal without a key; (iii) I–10 between Phoenix and Tucson is a central corridor for drug trafficking and undocumented alien smuggling; and (iv) because smugglers often travel across the desert before getting on the interstate, a high percentage of drug and undocumented alien smugglers are fond of stolen four-wheel-drive trucks due to the trucks' off-road capabilities.

Because of his initial suspicion, Officer Powers promptly crossed the median separating eastbound and westbound I–10 and began following the pickup.

As he closed on the vehicle, Officer Powers observed that the truck had a temporary paper license plate that was not fastened at the bottom two corners. Without fasteners at the bottom, the license plate blew upwards in a flapping motion. The temporary plate caused Officer Powers's initial suspicion to ripen. He explained that his experience with stolen vehicles led him to believe that car thieves commonly affix either stolen or forged temporary paper license plates to stolen vehicles. When asked by the Court as to why that was the case, Officer Powers explained that until recently police officers were usually not able to run temporary plates through Arizona's computerized vehicle registration system.[1]

Officer Powers clearly stated that he did not observe any moving violations of Defendant's vehicle. Moreover, the temporary license plate was legible, even with the lack of bottom fasteners. Nevertheless, Officer Powers stated that he believed that there was a violation of Ariz. Rev.Stat. § 28–2354 because the temporary license plate was not "securely fastened."[2]

Officer Powers called for assistance and, when backup arrived, initiated the traffic stop. He called for backup because he

---

1. Officer Powers testified that, at the time of the stop, queries of temporary license plates through Arizona's registration system usually resulted in a response of no information available.

2. In pertinent part, Ariz.Rev.Stat. § 28–2354(B) provides as follows:

A person shall maintain each license plate so it is clearly legible. A person shall securely fasten each license plate to the vehicle as follows:
1. To prevent the plate from swinging.
2. At a height of at least twelve inches from the ground to the bottom of the plate.
3. In a position to be clearly visible.

was concerned that the occupants would try to flee once the car was stopped.

Under cross-examination, Officer Powers indicated that he was likely to have stopped the truck even without the inadequately attached temporary license plate. However, he was clear in stating that he did not definitively decide to stop the truck until he observed the temporary plate.

After Officer Powers pulled the truck over, the driver and two other passengers immediately attempted to flee. Officer Powers gave pursuit and Defendant ultimately surrendered peacefully. When he returned to the truck, Officer Powers observed, for the first time, that there were bullet holes in the truck and that the steering column had been damaged. When the truck's vehicle identification number was checked out, Officer Powers learned that the truck had been reported stolen on March 12, 2003.

***Standard for Review***

■ A police officer can justify a traffic stop in two ways. First, a stop is justified if the police officer has a reasonable suspicion that a traffic violation has occurred. *United States v. Lopez–Soto,* 205 F.3d 1101, 1104–05 (9th Cir.2000). If an officer has reasonable suspicion that a traffic violation has occurred, it does not matter whether the basis for a stop is mere pretext. *See Whren v. United States,* 517 U.S. 806, 817–19, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Second, an investigatory traffic stop is justified if the officer has reasonable suspicion that criminal activity is afoot. *United States v. Arvizu,* 534 U.S. 266, 273–74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *United States v. Colin,* 314 F.3d 439, 442 (9th Cir.2002).

■ With respect to violations of traffic law, a good-faith belief that the law prohibits certain conduct is not sufficient if the law does not actually prohibit such conduct. *Lopez–Soto,* 205 F.3d at 1106. Thus, an officer's belief that a violation has

occurred must be grounded in the law, his "[s]uspicions must be reasonable, and they cannot be if they are not sufficient to cause an officer to believe that the driver has done something illegal. If an officer simply does not know the law, and makes a stop based upon objective facts that cannot constitute a violation, his suspicions cannot be reasonable." *United States v. Mariscal,* 285 F.3d 1127, 1130 (9th Cir.2002).

■ However, while officers must be reasonable in how they interpret the law, "that does not mean that the officer must have a precise appreciation of the niceties of the law. If the facts are sufficient to lead an officer to reasonably believe that there was a violation, that will suffice, even if the officer is not certain about exactly what it takes to constitute a violation. Moreover, a mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot." *Id.* (internal citation omitted).

■ In determining whether an officer had reasonable suspicion to stop the vehicle in which Defendant was traveling, the Court should consider the "totality of the circumstances" and give due weight to the factual inferences drawn by Officer Powers in light of his experience and training. *Arvizu,* 534 U.S. at 273–74, 122 S.Ct. 744. "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Lopez–Soto,* 205 F.3d at 1105 (quoting *United States v. Michael R.,* 90 F.3d 340, 346 (9th Cir.1996)). Reasonable suspicion is not a particularly onerous standard and falls "considerably short of satisfying a preponderance of the evidence standard." *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744.

### Discussion

■ The Court finds that the stop of Defendant's vehicle was justified because Officer Powers had an objectively reasonable belief that Defendant had violated Arizona traffic laws. Alternatively, the Court finds that the stop was justified because Officer Powers had reasonable suspicion that Defendant's vehicle was stolen.

***Violation of Arizona Traffic Law:*** Defendant's counsel conceded at oral argument that if the manner in which the temporary license plate was fastened to Defendant's vehicle violated Arizona law, then, under *Whren,* the stop was legal. Thus, the Court must determine whether the law applies to the facts considered by Officer Powers. *See Mariscal,* 285 F.3d at 1131 (analyzing the facts described by the officer to determine whether he had set forth a violation of the law).

Defendant's counsel argued that the statutory language requiring that the license plate be affixed so as to "prevent swinging" indicates that Ariz.Rev.Stat. § 28–2354(B) only applies to permanent metal license plates which could "swing" if not securely fastened. Poorly attached temporary paper license plates would not swing, argues Defendant's counsel, and, thus, are not covered by Ariz.Rev.Stat. § 28–2354(B).

Defendant's argument asks too much. The statute clearly provides that a license must be securely fastened in such a way as to prevent the plate from swinging, at a height of at least twelve inches from the ground to the bottom of the plate, and in a position to be clearly visible. If this Court were to interpret the Arizona statute in the manner requested by Defendant, then no tenuous, lowered, or obscured means of attaching a temporary license plate would violate Ariz.Rev.Stat. § 28–2354(B) because the law only applies to permanent license plates. While a reference to "swinging" plates is more commonly associated with metal plates, nothing in the statute exempts temporary license plates from the requirements of Ariz.Rev.Stat. § 28–2354(B) and the Court declines to adopt such a narrow interpretation of the statute. *Cf. State v. Paredes,* 167 Ariz. 609, 810 P.2d 607, 608–09 (1991) (noting that the trial court found that a traffic stop was legal where "only a portion of a temporary paper registration was visible" on defendant's vehicle).

Having determined that Ariz.Rev.Stat. § 28–2354(B) applies to poorly attached temporary license plates, the Court must now determine whether Officer Powers had a reasonable suspicion that the temporary license plate on Defendant's vehicle was not securely attached.

In *Mariscal,* the officer pulled over a car for violating an Arizona statute that prohibited making a turn " 'without giving an appropriate signal ... in the event any other traffic may be affected by the movement.' " *Mariscal,* 285 F.3d at 1131 (quoting Ariz.Rev.Stat. § 28–754(A)). However, the government did not present any evidence that any other vehicle was on the road at the time of the contested turn. Thus, "there was not a shard of evidence that any vehicle other than [the defendant's vehicle] itself was affected by the [unsignaled] right turn." *Id.* Because there was no other traffic to be "affected" by the turn, the Court of Appeals concluded that "no officer could have a reasonable suspicion that the driver of the vehicle had violated a traffic law...." *Id.* at 1133.

This case is easily distinguished from *Mariscal* because the Government presented sufficient evidence to show that Officer Powers had reasonable suspicion to believe that Defendant was violating a traffic law. Officer Powers testified regarding how he observed that the temporary license plate was only fastened at the

top. He explained that he saw the bottom of the license blowing upwards in the breeze created by the moving truck. Officer Powers stated under oath that he believed that the license was not securely fastened because of the absence of bottom fasteners and from the way that the license moved in the wind. Officer Powers credible sworn testimony is sufficient evidence to demonstrate his reasonable suspicion that there was a violation of Ariz.Rev. Stat. § 28–2354(B), even if he was "not certain about exactly what it takes to constitute a violation." *Mariscal*, 285 F.3d at 1130.

*Criminal Activity:* Even if this Court is mistaken about the interpretation of Ariz.Rev.Stat. § 28–2354(B), the stop was still justified because Officer Powers articulated reasonable suspicion that the truck was stolen. Officer Powers testified that he had personally recovered stolen vehicles that had broken side windows and temporary license plates and that, in his experience, most stolen vehicles had broken side windows. Specifically, Officer Powers identified the following factors that led him to believe that the truck was stolen:

1. The truck's rear driver's side window was broken out and car thieves often gain access to the interior of a vehicle by breaking a window;

2. The truck was a Dodge and car thieves often steal Dodge trucks because they are relatively easy to start without a key;

3. The vehicle was a truck on a route that is well known for illegal alien and/or drug smuggling and illegal alien and/or drug smugglers commonly use stolen trucks to ply their trade;

4. The truck was a 4–wheel drive and drug and/or illegal alien smugglers commonly utilize stolen 4–wheel-drives because they are handy for crossing desert terrain; and

5. The truck had a temporary license plate and a significant number car thieves use temporary license plates, some forged, some legitimate, on stolen cars.

While Defendant argues that each of these factors could be subject to an innocent explanation, Courts are instructed not to engage in an individualized consideration of each factor:

> The [lower] court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the "totality of the circumstances," as our cases have understood that phrase. The court appeared to believe that each observation by [the officer] that was by itself readily susceptible to an innocent explanation was entitled to "no weight." *Terry*, however, precludes this sort of divide-and-conquer analysis. The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was "perhaps innocent in itself," we held that, taken together, they "warranted further investigation."

*Arvizu*, 534 U.S. at 274–75, 122 S.Ct. 744 (quoting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

When taken together and viewed in light of Officer Powers's experience and training, the factors articulated by Officer Powers evince reasonable suspicion.

Defendant attempts to defeat Officer Powers' suspicions by asserting a factor-by-factor challenge to the factors proffered by the Government. [Doc. # 19 at 2–4.] Defendant is correct that, taken in isolation, a factor like traveling on a known route for alien smuggling or drugs has

very little probative value. *United States v. Sigmond–Ballesteros*, 285 F.3d 1117 (9th Cir.2002). However, this case is significantly different from the situation present in *Sigmond–Ballesteros*. There, the court determined that, even taken together, none of the factors articulated by the officer were suspicious in light of the circumstances. *Id.* at 1122–23. This case, however, is better analogized to cases like *Arvizu* and *Terry* where a group of facially innocent factors combine to create reasonable suspicion. Officer Powers carefully explained how the various individual factors were interrelated and fit together to form reasonable suspicion.

Thus, even though some of the factors are amenable to innocent explanations, taken together, in light Officer Powers's experience, and under the totality of the circumstances, the factors suffice to generate a reasonable suspicion. *See United States v. Hernandez*, 313 F.3d 1206, 1208 (9th Cir.2002) (finding reasonable suspicion present in light of five factors, including fact that package came from California, "a known drug-source state"); *see also United States v. Diaz–Juarez*, 299 F.3d 1138, 1141–42 (9th Cir.2002) (distinguishing *Sigmond–Ballesteros* where initial suspicion triggered by known drug route, "ripened into reasonable suspicion" when coupled with "unusual car and driving behavior"). Although the make of the truck, a broken side window, the location of the truck, or a shoddily-affixed temporary license plate may be irrelevant if taken alone, this Court cannot engage in such a "divide and conquer" analysis. These factors, taken together and in light of Officer Powers' experience with stolen vehicles, were sufficient to create a reasonable suspicion to justify a brief investigatory stop.

The Court therefore finds that, under the totality of these circumstances, Officer Powers acted reasonably in stopping the vehicle. Because the initial stop was valid, the Court will not suppress the evidence that arose from that stop.

Accordingly,

**IT IS ORDERED** denying Defendant's Motion to Suppress [Doc. # 10].