213 P.3d 214

**STATE of Arizona, Appellee,**

v.

**Douglas Dean STARR, Appellant.**

**No. 1 CA–CR 08–0250.**

Court of Appeals of Arizona, Division 1, Department A.

June 18, 2009.

Terry Goddard, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section and Melissa A. Parham, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Law Office of Lee Phillips, PC By Lee Phillips, Flagstaff, Attorney for Appellant.

1. Arizona Rule of Criminal Procedure 31.26 provides as follows:

Partial Publication. When the court issuing a decision concludes that only a portion of that decision meets the criteria for publication as

## OPINION

BARKER, Judge.

¶ 1 Douglas Dean Starr ("Defendant") appeals his convictions for possession of marijuana for sale, possession of dangerous drugs, and possession of drug paraphernalia. The convictions arose from the discovery of marijuana, methamphetamine, and drug paraphernalia in Defendant's vehicle following a traffic stop. Defendant raises a number of issues regarding the denial of his motion to suppress evidence. Defendant contends the initial traffic stop that led to the search of his vehicle was unlawful because he did not commit a traffic violation. We address that argument in this opinion as it requires us to interpret a statute not yet addressed by Arizona's appellate courts. We address the remaining arguments in a simultaneously filed memorandum decision.[1] For the reasons set forth in both this opinion and the memorandum decision, we affirm Defendant's convictions.

### I.

¶ 2 After Defendant was charged, he filed a motion to suppress all evidence seized during the traffic stop. Defendant argued the traffic stop was unlawful because there was no traffic violation. After an evidentiary hearing, the trial court ultimately denied the motion to suppress. The court found the officer had reasonable suspicion of illegal activity when he made the traffic stop.

¶ 3 Once the motion to suppress was denied, the parties agreed to waive a jury trial and submit the case to the court upon stipulated facts as well as the evidence from the suppression hearing. In that stipulation, Defendant stipulated to the elements of each offense. Defendant was found guilty of all three counts and sentenced to concurrent, mitigated terms of four years' imprisonment for possession of marijuana for sale, one year for possession of dangerous drugs, and six months for possession of drug paraphernalia.

an opinion, the court shall issue that portion of the decision as a published opinion and shall issue the remainder of the decision as a separate memorandum decision not intended for publication.

We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003) and 13–4033 (2001). We first set forth the facts pertinent to the traffic stop. We then turn to the legal arguments.

## II.

¶ 4 We review the facts in the light most favorable to sustaining the ruling on a motion to suppress. *State v. Hyde,* 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996). We confine our review to consideration of the facts presented at the suppression hearing. *State v. Blackmore,* 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996). In our review, we give deference to the trial court's factual findings. *State v. Adams,* 197 Ariz. 569, 572, ¶ 16, 5 P.3d 903, 906 (App.2000). However, we review *de novo* the ultimate legal question of whether Defendant's constitutional rights were violated. *Id.*

¶ 5 At approximately 8:00 p.m. on the night of the incident, a Department of Public Safety officer patrolling Interstate 40 observed Defendant's vehicle traveling at approximately the posted speed limit of seventy-five miles per hour. The officer noted Defendant was following the vehicle ahead of him at an unsafe distance. The officer then observed Defendant's vehicle move from the right lane to the left lane and again follow a vehicle at an unsafe distance. Although the officer was unable to actually time the interval between Defendant's vehicle and the vehicle(s) ahead of it, his determination that the following distance was unsafe was based on his observations and experience.

¶ 6 The officer then observed Defendant's vehicle move from the left lane back into the right lane. However, Defendant did not signal before he began his lane change. Defendant did not use his signal until his vehicle was already straddling the line dividing the lanes and partially occupying the right lane. Defendant executed his lane change as he passed an on-ramp in which a large commercial truck was merging onto Interstate 40. The officer estimated Defendant's vehicle was approximately 150 feet from the front of the truck. The truck was not yet at the posted speed limit.

¶ 7 The officer believed Defendant failed to signal a lane change as required by law. Specifically, Defendant failed to signal at least 100 feet before he began his lane change. Further, the officer believed Defendant's lane change was conducted in an unsafe manner. The officer believed changing lanes towards an on-ramp at night without first signaling and in such proximity to a large vehicle entering the freeway created a hazard or otherwise affected the truck. As a result, the officer stopped Defendant for failing to properly signal a lane change.

## III.

¶ 8 Defendant raises two issues regarding the legitimacy of the stop. Defendant argues that the traffic stop was required to be based on probable cause rather than "reasonable suspicion" of a traffic violation. Defendant also argues that even if the standard of reasonable suspicion is applied, the officer had no reasonable suspicion to stop Defendant because Defendant did not violate any traffic law when he made his lane change.

### A.

¶ 9 Defendant contends that probable cause, rather than a reasonable suspicion should apply to this stop, arguing that the standard is different for stops based on traffic violations as contrasted with suspected criminal activity. The trial court here applied a reasonable suspicion standard.

¶ 10 Defendant points to the United States Supreme Court decision in *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), in which the Court stated that "the decision to stop an automobile is reasonable where the police have *probable cause* to believe that a traffic violation has occurred." (Emphasis added.) The broader issue in *Whren* was whether an officer who stops someone based on a traffic violation must also be "motivated to stop the car by a desire to enforce the traffic laws." *Id.* at 808, 116 S.Ct. 1769. In rejecting this proposition, the Court in *Whren* did not hold that a traffic stop must be based on probable cause as contrasted with reasonable suspicion. The trial court in *Whren* made its decision

based on a probable cause standard, and the Supreme Court reviewed it in that context. *Id.* at 819, 116 S.Ct. 1769 ("Here the District Court found that the officers had probable cause to believe that petitioners had violated the traffic code. That rendered the stop reasonable under the Fourth Amendment. . . .").

¶ 11 Indeed, cases both before and after *Whren* have applied a "reasonable suspicion" standard to traffic stops. *Arizona v. Johnson,* — U.S. —, 129 S.Ct. 781, 784, 172 L.Ed.2d 694 (2009) (permitting a traffic stop "when the police officer reasonably suspects" a traffic violation); *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (holding that "the usual traffic stop is more analogous to a so-called 'Terry stop,' [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]" and applying a "reasonable suspicion" standard); *United States v. Choudhry,* 461 F.3d 1097, 1102 (9th Cir.2006) (analyzing *Whren* and concluding that "under *Whren,* so long as Officers Silver and Chan had *reasonable suspicion* to believe that Alvarado 'violated the traffic code,' the stop was 'reasonable under the Fourth Amendment [and] the evidence thereby discovered admissible.' ") (emphasis added).

¶ 12 In *United States v. Lopez–Soto,* the Ninth Circuit considered in some detail the precise issue presented to us. 205 F.3d 1101, 1104–05 (9th Cir.2000). In that case, the defendant was stopped based on a license plate violation. *Id.* at 1103. Relying on the Supreme Court's decision in *Berkemer,* Lopez–Soto noted "[p]rior to *Whren,* it was settled law that reasonable suspicion is enough to support an investigative traffic stop." *Id.* at 1104. The Ninth Circuit noted:

> We do not believe that the Court in *Whren* intended to change this settled rule. The passage on which Lopez–Soto relies tells us only that probable cause is sufficient to support a traffic stop, not that it is necessary. If the Supreme Court announced in *Whren* a new rule of law, as Lopez–Soto contends, we would expect it to have acknowledged the change and explained its reasoning. Such an explanation is notably absent from the *Whren* opinion.

*Id.* We agree with this analysis and the conclusion that "the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops." *Id.* at 1105.

**B.**

¶ 13 We turn now to Defendant's argument that the traffic stop was unlawful because he did not violate any provision of A.R.S. § 28–754 (2004). That section addresses "turning movements and required signals." Subsection (A) provides in relevant part:

> A person shall not . . . turn a vehicle from a direct course or move right or left on a roadway unless and until the movement can be made with reasonable safety. A person shall not so turn any vehicle without giving an appropriate signal in the manner provided by this article in the event any other traffic may be affected by the movement.

A.R.S. § 28–754(A). Subsection (B) provides:

> A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

A.R.S. § 28–754(B).

¶ 14 Interpretation of a statute is a question of law, which we review *de novo. See Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). When interpreting a statute, we attempt to fulfill the intent of the drafters, and we look to the plain language of the statute as the best indicator of that intent. *Id.* We give the words and phrases of the statute their commonly accepted meaning unless the drafters provide special definitions or the context indicates a special meaning. *State v. Barr,* 183 Ariz. 434, 438, 904 P.2d 1258, 1262 (App.1995). If the language is clear and unambiguous, "we must give effect to that language and need not employ other rules of statutory construction." *State v. Riggs,* 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997).

¶ 15 Defendant raises two issues regarding violation of A.R.S. § 28–754. First, Defendant argues that this section requires the use of a turn signal only for turns of at least

ninety degrees to the left or right. Second, he contends that there was no violation as there was no traffic that was affected by the lack of a signal.

### 1.

¶ 16 We first consider Defendant's argument that A.R.S. § 28–754 requires a signal only in the event of a ninety-degree turn "right or left," while moves such as a lane change require only "reasonable safety." To support this, Defendant points to the first sentence in subsection (A) which prohibits "turn[s] ... from a direct course or mov[ing] right or left on a roadway unless and until the movement can be made with reasonable safety." A.R.S. § 28–754(A). Defendant argues that this language is different from the specification to "turn right or left" in subsection (B) and that subsection (A) only requires "reasonable safety" for turns less than ninety degrees.

¶ 17 Defendant's reasoning is flawed. We follow the plain language of the statute. *State v. Petrak*, 198 Ariz. 260, 264, ¶ 10, 8 P.3d 1174, 1178 (App.2000) ("In interpreting a statute, we look first to its language and apply the language unless the result is 'absurd or impossible.'" (quoting *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 103, 859 P.2d 724, 726 (1993))). The second sentence of subsection (A) refers back to the first sentence and says "[a] person shall not *so turn* any vehicle without giving an appropriate signal." Thus, the reference to "so turn" expressly invokes "turn[s] ... from a direct course or move[s] right or left." A driver who changes lanes "turns. from a direct course" and "moves right or left." Accordingly, pursuant to the statute's plain language, a lane change must comport with the signaling requirements if "other traffic may be affected by the movement." [2]

¶ 18 A statute's purpose is also a relevant factor in statutory interpretation. *Haroutunian v. Valueoptions, Inc.*, 218 Ariz. 541, 551, ¶ 28, 189 P.3d 1114, 1124 (App.2008).

The purposes of the cited portions of the statute are to ensure that changes in the direction of travel are made only when it is safe to do so and after properly alerting other traffic that may be affected by the impending change. These purposes would not be fulfilled if we adopted Defendant's interpretation. Under that interpretation, no turn of less than ninety degrees would ever require a signal, regardless of traffic conditions or other traffic that may be affected, as long as the turn could be made with reasonable safety. That would necessarily include turns at intersections of less than ninety degrees, which may be found along major intersections such as Grand Avenue or Cave Creek Road in Phoenix. Neither would the signaling requirement, as interpreted by Defendant, apply to lane changes even when on a major freeway at the height of rush hour. Surely, these are not traffic conditions that the legislature intended to exclude. Based on the language and purpose of the statute, we reject Defendant's argument that the statute only applies to turns of ninety degrees.

### 2.

¶ 19 We now turn to Defendant's second statutory argument, namely, that the truck proceeding up the on-ramp did not constitute "other traffic [that] may be affected by the movement," as § 28–754(A) requires. We likewise reject this argument.

¶ 20 The question of when traffic "may be affected" under A.R.S. § 28–754(A) has never been decided in Arizona. Other jurisdictions, however, have addressed the issue of when traffic may be affected by an unsignaled turn or lane change. The Ninth Circuit examined the Arizona statute at issue here in a case involving a driver who was stopped after making an unsignaled right turn off McDowell Road in Phoenix. *United States v. Mariscal*, 285 F.3d 1127, 1129 (9th Cir.2002). Recognizing that § 28–754 does not require drivers to signal every time they

---

**2.** We note the Arizona Driver License Manual instructs drivers that "[any] time you plan to change directions, use your turn signals—whether you are changing lanes, turning at an intersection, entering a freeway, pulling away from a

curb or pulling off to the side of the road." *Arizona Driver License Manual and Customer Service Guide* (Ariz. Dep't of Transp., Motor Vehicle Div.), Oct. 2008, at 27.

make a turn, the Ninth Circuit found that before a violation can be suspected, "there must have been traffic, and there must have been some possibility that the traffic would be 'affected by the movement' of the [vehicle] when it made its ... turn." *Id.* at 1131. There was no evidence of any traffic that could have been affected by Mariscal's right-hand turn. *Id.* at 1129, 1131. The district court had apparently taken judicial notice that "McDowell Road is a heavily traveled east-west street in the City of Phoenix." *Id.* at 1131. The Ninth Circuit rejected the application of judicial notice in this context. *Id.* at 1131–32. Nor did the Ninth Circuit consider that the patrol car itself, which was "parked at the side of the road looking for traffic violations," was affected by the turn. *Id.* at 1132. Accordingly, the Ninth Circuit held that the stop violated the Fourth Amendment because "no officer could have a reasonable suspicion" that a traffic law was violated under those facts. *Id.* at 1133. We agree with this conclusion on the facts in *Mariscal,* but it does not resolve the issue before us. Here, other vehicles were traveling on the freeway in the vicinity of Defendant's vehicle when he changed lanes without signaling. We must examine whether the lane change "may [have] affected" that traffic.

¶ 21 Other jurisdictions with signaling statutes similar to Arizona's have considered what evidence is necessary to show other traffic "may be affected" by a vehicle's unsignaled turn or lane change. In Tennessee,[3]

the analysis depends on whether the "forward travel" of other vehicles in the area of the lane change would have been affected, and whether a vehicle that had been passed would have to "slow down, speed up, or in any way alter its course" because of the lane change. *State v. Smith,* 21 S.W.3d 251, 257 (Tenn.Ct.App.1999). In *Smith,* an officer stopped a vehicle on Interstate 40 after the driver passed another motorist and changed lanes without signaling. *Id.* at 252. Even though the vehicle that had been passed was "in the near vicinity," the court determined the vehicle had not been affected by the failure to signal because it did not have to slow down, speed up, or otherwise alter its course. *Id.* at 257.

¶ 22 The Supreme Court of New Jersey has suggested that when a vehicle making a lane change is moving *away* from a vehicle behind it, the vehicle in front may actually "facilitate" the movement of the vehicle behind. *State v. Williamson,* 138 N.J. 302, 650 A.2d 348, 349 (1994). Because the factual record was unclear, that court remanded the case to determine whether traffic may have been affected when the only evidence of affected traffic was the patrol car itself traveling behind a vehicle that moved from the center to the right lane without signaling.[4] *Id.* at 350. Nonetheless, that court rejected a standard that traffic must *actually* be affected and applied the statutory language of "may be affected":

> may be affected by such movement, shall give a signal required in this section, plainly visible to the driver of the other vehicle of the intention to make such movement.
>
> Tenn.Code Ann. § 55–8–143(a) (Supp.1997).

**4.** New Jersey's statute provides:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway ... or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway, or start or back a vehicle unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.
>
> N.J. Stat. Ann. § 39:4–126 (West 2008).

**3.** Tennessee has two relevant statutes. One is identical to Arizona's and provides as follows:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in § 55–8–140, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway, unless and until this movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in §§ 55–8–143 and 55–8–144 in the event any other traffic may be affected by this movement.
>
> Tenn.Code Ann. § 55–8–142(a) (Supp.1997).
>
> The next section provides as follows:
>
> Every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that that movement can be made in safety, and whenever the operation of any other vehicle

We agree with the State that it need not establish that the move actually affected traffic. That is not the language of the statute.... The Attorney General emphasized, and we agree, that "the trooper needed only a reasonable and articulable suspicion that defendant's failure to signal may have affected other traffic * * *."... The language—may affect traffic—implies that traffic that may be affected is fairly close and visible, and that the signal need not be dictated solely by concerns of safety and accident avoidance. Motorists in the vicinity whose movements may be affected must be made aware of a driver's intentions.

*Id.* at 349.

¶ 23 California courts hold that the presence of the patrol car itself, traveling behind the target vehicle, is enough. *People v. Logsdon,* 164 Cal.App.4th 741, 79 Cal.Rptr.3d 379, 381 (2008). The *Logsdon* court interpreted California's statute [5] as aimed mainly at "vehicles behind the car making the lane change." *Id.* The court held that because the officer was directly behind Logsdon's vehicle when it made an unsignaled lane change "in the same lane and within 100 feet of [Logsdon]," the officer was affected. *Id.; see also People v. Miranda,* 17 Cal.App.4th 917, 21 Cal.Rptr.2d 785, 792 (1993) (finding that defendant was "mistaken that there was no other traffic around" because the officer was behind defendant's vehicle at the time of the unsignaled turn).

■ ¶ 24 In considering these authorities, we conclude that requiring an actual change in movement by the non-turning vehicle is a higher standard than the "may be affected" language in the statute. We therefore reject any such interpretation of A.R.S. § 28-754. A driver who makes an unsignaled turn or move deprives other drivers of a warning that a change of course is about to take place. To the extent that information enters into the decision-making calculus of a nearby driver, that driver "may be affected." It is not necessary to speculate in what way

another driver may have reacted; rather, it is enough that the move may influence the factors a driver would consider in order to drive safely.

¶ 25 In the present case, we need not decide whether the patrol car alone would have constituted traffic that may have been affected by Defendant's lane change. The officer testified the lane change was unsafe because the commercial truck was preparing to merge onto the interstate from the on-ramp. The officer believed the truck driver would be looking in the leftside mirror and would only have seen Defendant's vehicle traveling in the left lane. Without a signal, the officer believed the truck driver would not have realized Defendant was moving into the right lane. In such a circumstance, Defendant's failure to signal his move into the right lane deprived the truck driver of a warning that Defendant planned to change course. The presence or absence of traffic in the lane in which ongoing traffic travels is a factor that any driver should consider when merging onto the freeway. As such, Defendant's lane change could reasonably be considered a part of the truck driver's decision-making calculus and "may have affected" that driver. The presence of this merging vehicle on the on-ramp was a specific, articulable fact that satisfied the "may be affected" requirement of A.R.S. § 28-754(A). Accordingly, the officer had reasonable suspicion to stop Defendant based on a violation of that statute.

## IV.

¶ 26 For the reasons set forth above, and in the memorandum decision of this same date, we affirm Defendant's convictions.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and JOHN C. GEMMILL, Judge.

5. No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement.
Cal. Veh.Code § 22107 (West 2008).