IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,
*Appellee,*

*v.*

MICHAEL ANTHONY SALCIDO,
*Appellant*.

No. 2 CA-CR 2015-0008
Filed November 16, 2015

Appeal from the Superior Court in Gila County
No. S0400CR201400106
The Honorable Monica Stauffer, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By David A. Sullivan, Assistant Attorney General, Tucson
*Counsel for Appellee*

Emily Danies, Tucson
*Counsel for Appellant*

## OPINION

Judge Howard authored the opinion of the Court, in which Presiding Judge Vásquez and Judge Kelly[1] concurred.

H O W A R D, Judge:

**¶1**      Following a jury trial, appellant Michael Salcido was convicted of possession of drug paraphernalia, possession of dangerous drugs, possession of dangerous drugs for sale, and transportation or importation of dangerous drugs for sale. On appeal, Salcido argues the trial court erred by denying his motion to suppress evidence obtained at a traffic stop because the officer lacked reasonable suspicion of a traffic violation. Because the state concedes that two of Salcido's convictions violate double jeopardy, and we agree, we vacate Salcido's convictions for possession and possession for sale of dangerous drugs, but otherwise affirm.

### Factual and Procedural Background

**¶2**      In reviewing a trial court's ruling on a motion to suppress, "we consider only the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the . . . ruling." *State v. Gonzalez*, 235 Ariz. 212, ¶ 2, 330 P.3d 969, 970 (App. 2014).

**¶3**      In March 2014, Detective Danny Rice of the Gila County Sheriff's Department received an anonymous tip from a "concerned citizen" that Salcido and another person would be driving through Miami, Arizona in a particular vehicle with a large quantity of methamphetamine. Based on this information, Rice began surveillance along the route that the informant had stated Salcido would be taking. Within four hours, Rice spotted Salcido's vehicle

---

[1]The Hon. Virginia C. Kelly, a retired judge of this court, is called back to active duty to serve on this case pursuant to orders of this court and our supreme court.

and began to follow it. Salcido was in the number one, or fast lane, and Rice was in the number two, or slow lane, about a car length behind him. Salcido immediately moved unsafely from the number one into the number two lane without signaling, cutting off Rice, and rode on the shoulder over the fog line for ten to twelve seconds before driving back across lane two into lane one. Rice then stopped Salcido for the violations.

¶4     Shortly thereafter, other detectives arrived on the scene, one of whom was accompanied by a drug canine. Rice asked Salcido to consent to an open air sniff of his vehicle by the drug canine, and Salcido agreed. During the sniff, the canine alerted to the presence of narcotics in the vehicle, and the officers conducted a follow-up search. They discovered several items used to ingest drugs—a plastic straw and pieces of aluminum foil with a "burnt residue" on them. Rice consequently arrested Salcido for possession of drug paraphernalia. During the search incident to that arrest, Rice found approximately three ounces of methamphetamine and $905 cash in Salcido's pockets.

¶5     Before trial, Salcido moved to suppress the drug evidence, arguing it was the fruit of an illegal traffic stop. The trial court denied the motion. The jury convicted Salcido of the possession and transportation counts, but found him not guilty of money laundering. The court sentenced him to mitigated, concurrent prison terms, the longest of which is five years. We have jurisdiction over Salcido's appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1).

## Legality of the Traffic Stop

¶6     Salcido first argues the trial court erred by denying his motion to suppress evidence because, even assuming Rice's testimony regarding Salcido's driving was accurate, his conduct did not constitute a traffic violation. "We review a denial of a motion to suppress for an abuse of discretion, but review constitutional issues de novo," *Gonzalez*, 235 Ariz. 212, ¶ 7, 330 P.3d at 971, and "[i]nterpretation of a statute is a question of law, which we review de novo," *State v. Starr*, 222 Ariz. 65, ¶ 14, 213 P.3d 214, 218 (App. 2009).

¶7        A traffic stop must be based on an officer's articulable, reasonable suspicion that the person has committed a traffic violation.  *Id.* ¶ 11.  As relevant here, A.R.S. § 28-754 states:

> A.  A person shall not . . . move right or left on a roadway unless and until the movement can be made with reasonable safety.  A person shall not so turn any vehicle without giving an appropriate signal in the manner provided by this article in the event any other traffic may be affected by the movement.
>
> B.  A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

¶8        The phrase "'other traffic [that] may be affected by the movement'" means that although "§ 28-754 does not require drivers to signal every time they [change lanes,]" they must signal whenever they perform a movement that "could reasonably be considered a part of the [other] driver's decision-making calculus." *Starr*, 222 Ariz. 65, ¶¶ 19-20, 25, 213 P.3d at 219-21 (first alteration in *Starr*).  The state need not show that the failure to signal a lane change caused "an actual change in movement" by other traffic. *Id.* ¶ 24.  In *Starr,* we explicitly left open the question whether the police officer's vehicle could constitute "other traffic," but cited *People v. Logsdon*, 79 Cal. Rptr. 3d 379, 381 (Ct. App. 2008), for the proposition that "California courts hold that the presence of the patrol car itself, traveling behind the target vehicle, is enough." *Starr*, 222 Ariz. 65 ¶¶ 23, 25, 213 P.3d at 221; *see also People v. Miranda*, 21 Cal. Rptr. 2d 785, 792 (Ct. App. 1993).

¶9        Salcido contends Rice's vehicle could not constitute "other traffic" because the legislature knew that the officer's car must be present in order to effectuate the traffic stop.  "In determining the legislature's intent, we initially look to the language of the statute itself."  *Bilke v. State*, 206 Ariz. 462, ¶ 11, 80 P.3d 269,

271 (2003). If the language of a statute is clear, "the court must 'apply it without resorting to other methods of statutory interpretation,' unless application would lead to impossible or absurd results." *Id.*, *quoting Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

**¶10** Here, the statute applies when "other traffic may be affected." § 28-754. Section 28-601(28), A.R.S., defines "traffic" as "pedestrians, ridden or herded animals, vehicles and other conveyances either singly or together while using a highway for purposes of travel." The plain meaning of the phrase "other traffic" does not exclude a specific class of vehicle—law enforcement or otherwise. The inclusion of law enforcement vehicles into the phrase would not bring about "impossible or absurd results." *Bilke*, 206 Ariz. 462, ¶ 11, 80 P.3d at 271.

**¶11** A survey of other traffic laws bolsters a plain meaning interpretation. The legislature has used the phrase "other traffic" in other statutes which must have been intended to include police vehicles. *See* A.R.S. § 28-645(A)(1)(b) ("Vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection."); A.R.S. § 28-701 (driver's speed shall be "reasonable and prudent" with regard to conditions, including "with respect to pedestrians or other traffic"); A.R.S. § 28-873 ("Except if necessary to avoid conflict with other traffic or if in compliance with law or the directions of a police officer or traffic control device, a person shall not stop, stand or park a vehicle in" any of the listed places.); A.R.S. § 28-891 ("The driver of a vehicle shall not back the vehicle unless the movement can be made with reasonable safety and without interfering with other traffic."); A.R.S. § 28-905 ("A person shall not open a door on a motor vehicle unless it is reasonably safe to do so and can be done without interfering with the movement of other traffic."). We can discern no reason the legislature would have intended these safety regulations to apply to protect the general driving public but not to protect police officers.

**¶12** Finally, a review of case law from other jurisdictions further suggests that the plain meaning of "other traffic" includes law enforcement vehicles. As mentioned in *Starr*, it is a settled proposition in California that a law enforcement vehicle can

constitute "other traffic." 222 Ariz. 65, ¶ 2, 213 P.3d at 221; *see Logsdon*, 79 Cal. Rptr. 3d at 381. Other courts have reached the same conclusion. *See State v. Seavey*, 564 A.2d 388, 389 (Me. 1989) (finding a police vehicle to constitute other traffic); *State v. Heisler*, 29 A.3d 320, 328 (N.J. Super. Ct. App. Div. 2011) ("'Other traffic' can include a police vehicle."); *State v. Hubble*, 206 P.3d 579, ¶ 12 (N.M. 2009) (finding a police vehicle to constitute other traffic); *United States v. Burkley*, 513 F.3d 1183, 1187 (10th Cir. 2008) (finding a police vehicle to constitute other traffic); *but cf. United States v. Mariscal*, 285 F.3d 1127, 1132 (9th Cir. 2002) (holding that parked police vehicle could not constitute other traffic).

**¶13** In sum, based on the plain meaning of the statute, a review of the overall statutory scheme for traffic law, and a review of other jurisdictions' interpretations of similar traffic laws, we find no legislative intent to exclude certain classes of vehicles from the definition of "other traffic." Therefore, we now answer the question we left open in *Starr*: a police officer's vehicle, including Rice's vehicle, can constitute "other traffic" under § 28-754.

**¶14** Salcido further argues he did not change lanes unsafely and no traffic violation occurred. We disagree for several reasons. First, § 28-754 only requires that other traffic "may be affected." *See Starr*, 222 Ariz. 65, ¶ 25, 213 P.3d at 221. The traffic maneuver need not actually affect other traffic, "it is enough that the move may influence the factors a driver would consider in order to drive safely." *Id.* ¶ 24. And, making an unsignaled lane change "deprives other drivers of a warning that a change of course is about to take place. To the extent that information enters into the decision-making calculus of a nearby driver, that driver 'may be affected.'" *Id.* ¶ 24.

**¶15** Second, Rice testified that Salcido had changed lanes without signaling, had "cut [Rice] off," and had been "all over the road." We thus cannot say the trial court abused its discretion in finding Rice observed a violation of § 28-754 which provided

reasonable suspicion to initiate a traffic stop. § 28-754; *see Starr*, 222 Ariz. 65, ¶ 25, 213 P.3d at 221.[2]

**¶16** Salcido additionally appears to argue the trial court erred in denying his motion to suppress because his detention was illegally prolonged and amounted to an illegal arrest. Salcido failed to raise these arguments below, and therefore has forfeited review except for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005). And because he has not argued the error was fundamental, and we find no fundamental error occurred, he has waived review of this issue. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App. 2008); *see also State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007) (appellate court will not ignore fundamental error if found).

## Double Jeopardy

**¶17** The state, in its answering brief, notes that two of Salcido's convictions violate the prohibition against double jeopardy because both possession of dangerous drugs and possession of dangerous drugs for sale are lesser-included offenses of transportation or importation of dangerous drugs. We agree. *See State v. Cheramie*, 218 Ariz. 447, ¶ 22, 189 P.3d 374, 378 (2008) (possession lesser-included offense of transportation for sale); *see also State v. Price*, 218 Ariz. 311, ¶ 5, 183 P.3d 1279, 1281 (App. 2008) ("For double jeopardy purposes, a lesser-included offense and the greater offense of which it is a part constitute the same offense, and multiple punishments for the same offense are not permissible."); *State v. Chabolla-Hinojosa*, 192 Ariz. 360, ¶ 13, 965 P.2d 94, 97 (App. 1998) (possession for sale lesser-included offense of transportation). Although Salcido did not raise this issue in his opening brief, violations of the prohibition against double jeopardy in sentencing constitute fundamental, prejudicial error, and violations of the prohibition against double jeopardy are not waived by failure to raise them below. *See Price*, 218 Ariz. 311, ¶ 4, 183 P.3d

---

[2] Because we conclude that Rice had reasonable suspicion based on the illegal lane change, we do not reach the issues of whether either Salcido's violation of A.R.S. § 28-729(1), or the concerned citizen tip, also justified the stop.

at 1281; *State v. Siddle*, 202 Ariz. 512, n.2, 47 P.3d 1150, 1153 n.2 (App. 2002).

## Disposition

**¶18**         For the foregoing reasons, we vacate Salcido's convictions and sentences for possession and possession for sale of dangerous drugs, but otherwise affirm his convictions and sentences.