NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellant,*

*v.*

ANTHONY RODRIGUEZ, *Appellee.*

No. 1 CA-CR 18-0127
FILED 4-23-2019

Appeal from the Superior Court in Mohave County
No. S8015CR201700911
The Honorable Richard Weiss, Judge *Retired*

**VACATED**

COUNSEL

Mohave County Attorney's Office, Kingman
By Jaimye Ashley
*Counsel for Appellant*

Law Offices of Shawn B. Hamp, Kingman
By Shawn B. Hamp, Virginia L. Crews, Troy Anderson
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**C A T T A N I**, Judge:

¶1 The State of Arizona appeals the superior court's order granting Anthony Rodriguez's motion to suppress evidence and statements in connection with drugs found during a traffic stop. We vacate the suppression ruling and remand because the superior court did not address (1) whether the arresting officer had reasonable suspicion to conduct the traffic stop, and (2) whether Rodriguez's admission that there were drugs in the car was made as part of a consensual discussion after the officer had returned Rodriguez's driver's license and issued a warning.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 In late June 2017, Rodriguez was arrested and charged with one count of transportation of dangerous drugs for sale and one count of possession of dangerous drugs for sale after an Arizona Department of Public Safety trooper stopped Rodriguez's vehicle for an alleged traffic violation and found methamphetamine in the trunk. Rodriguez moved to suppress evidence and statements obtained during the traffic stop, and the superior court conducted a suppression hearing at which only the arresting officer testified.

¶3 The officer testified that, while driving "several hundred feet at least" behind Rodriguez on an interstate highway, he observed Rodriguez make an "abrupt" lane change without using his turn indicator, pulling in front of another vehicle at an unsafe distance (only approximately one car-length). The officer then drove up beside Rodriguez, who appeared "stress[ed]" because he was "grimac[ing]" and gripping the steering wheel with his arm straight.

¶4 The officer then turned on his emergency lights, and Rodriguez pulled over onto the shoulder. After noting that both Rodriguez and the one passenger in the car appeared "exceptional[ly]" nervous, the officer told Rodriguez he was going to issue a warning and had Rodriguez get out of the car. While completing the warning, the officer noted

discrepancies between how Rodriguez and the passenger described the purpose of their trip, as well as that Rodriguez was driving a rental car but did not have the rental contract with him.

**¶5**　　　　The officer then handed Rodriguez his driver's license and the warning, and directly asked if he had anything illegal in the car. Rodriguez denied having any illegal items and stated, "Go ahead and check if you want." When the officer provided a consent to search form, Rodriguez asked if he could refuse to consent to the search. The officer told Rodriguez "of course, yes," but immediately followed with, "do you have drugs in the vehicle?" Rodriguez then answered, "well, I have a little." The officer asked if there was anything else, and Rodriguez admitted to having a couple of pounds of methamphetamine in the trunk. The officer detained Rodriguez, searched the car, and located methamphetamine in the trunk.

**¶6**　　　　The superior court granted Rodriguez's motion to suppress. The court expressed some skepticism regarding the officer's stated basis for the initial stop and observed that "I don't really disagree that the officer didn't have an ability to pull over Mr. Rodriguez for a traffic violation." The court further found that "when Mr. Rodriguez decided that he didn't want to sign the consent form and he said no, well, then everything after that now becomes an illegal search." The court subsequently granted the State's motion to dismiss the case without prejudice.

**¶7**　　　　The State timely appealed from the suppression ruling. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4032(6). *See State v. Bejarano*, 219 Ariz. 518, 522–23, ¶ 14 (App. 2008).

## DISCUSSION

**¶8**　　　　We review a suppression order for abuse of discretion, deferring to the superior court's factual findings but considering the court's legal conclusions de novo. *State v. Teagle*, 217 Ariz. 17, 22, ¶ 19 (App. 2007); *State v. Booker*, 212 Ariz. 502, 504, ¶ 10 (App. 2006). We consider only evidence presented at the suppression hearing, and we view the facts in the light most favorable to upholding the court's ruling. *State v. Butler*, 232 Ariz. 84, 87, ¶ 8 (2013).

## I.　　Traffic Stop.

**¶9**　　　　To initiate a traffic stop, an officer must have articulable, reasonable suspicion that the person committed a traffic violation. *Arizona v. Johnson*, 555 U.S. 323, 326 (2009); *State v. Salcido*, 238 Ariz. 461, 464, ¶ 7 (App. 2015). If an officer reasonably suspects that a driver committed a

traffic violation, the subjective intentions of the officer do not affect the validity of a traffic stop. *Whren v. United States*, 517 U.S. 806, 810–13 (1996); *Jones v. Sterling*, 210 Ariz. 308, 311, ¶ 10 (2005).

**¶10**        In Arizona, a driver passing another vehicle must do so "at a safe distance" and must give "an appropriate signal in the manner provided by this article in the event any other traffic may be affected by the movement." A.R.S. §§ 28-723(1), -754(A). In construing these statutes, we have held that a driver must use a turn signal if the lane change "enters into the decision-making calculus of a nearby driver." *State v. Starr*, 222 Ariz. 65, 72, ¶¶ 24–25 (App. 2009).

**¶11**        The superior court's ruling is not clear as to whether the court found the initial stop to be defective. After suggesting that the officer pulled up beside Rodriguez's vehicle in an attempt to "find *more* violations" (emphasis added), the court then stated that "I don't really disagree that the officer didn't have an ability to pull over Mr. Rodriguez for a traffic violation." Although the latter statement arguably conveys the superior court's belief that the officer did not have reasonable suspicion of a traffic violation to justify the stop, the court provided no rationale for this conclusion. The officer testified that Rodriguez made an abrupt and unsafe lane change without using a turn indicator, and there was no contrary evidence. The superior court could have discounted the officer's credibility or ability to observe, but it made no such finding. Accordingly, lacking any basis on which to affirm a finding that the initial traffic stop was not justified by reasonable suspicion, we vacate the court's ruling in this regard and remand for clarification.

## II.     Continued Contact After the Traffic Stop Concluded.

**¶12**        A traffic stop is considered reasonable (and thus permissible under the Fourth Amendment) as long as it is supported by reasonable suspicion and lasts no longer than necessary to effectuate the purpose of the stop. *See State v. Sweeney*, 224 Ariz. 107, 111–12, ¶¶ 16–17 (App. 2010). Once an officer has issued a traffic citation and concluded the purpose of the stop, "the driver must be permitted to proceed on his way without further delay or questioning" unless (1) the encounter becomes consensual or (2) the officer has by that time gained reasonable suspicion of other illegal activity. *Teagle*, 217 Ariz. at 23, ¶ 22. If police otherwise prolong the detention—even minimally—the seizure becomes unlawful, *see Rodriguez v. United States*, 135 S. Ct. 1609, 1615–16 (2015), and evidence obtained therefrom is subject to exclusion. *See Wong Sun v. United States*, 371 U.S. 471, 484–86 (1963).

¶13 Here, the traffic stop ended when the officer returned Rodriguez's driver's license and issued a warning—before Rodriguez admitted having drugs in the vehicle—and the court arguably explained why the officer's observations to that point did not amount to reasonable suspicion of illegal activity. The superior court did not, however, address whether the encounter with Rodriguez became consensual after the officer issued the warning, and instead ruled only that once Rodriguez decided that he did not want to sign the consent form, the encounter became an illegal search.

¶14 But an officer's brief questioning after issuing a traffic violation warning can be a permissible consensual encounter if the driver agrees to answer questions. *See Teagle*, 217 Ariz. at 23, ¶ 23. There is not "a litmus-paper test for distinguishing a consensual encounter from a seizure." *Florida v. Royer*, 460 U.S. 491, 506 (1983). Instead, a determination of whether the continued stop violates the Fourth Amendment turns on "all the circumstances surrounding the encounter" and focuses on whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 439 (1991). Because the superior court did not address whether the officer's conduct communicated to a reasonable person in Rodriguez's position that the person was not free to terminate the encounter, we vacate the suppression ruling in this regard and remand for further consideration.

## CONCLUSION

¶15 For the foregoing reasons, we vacate the superior court's ruling on the motion to suppress and remand for further proceedings consistent with this decision.